Karen GEHRT, Plaintiff,

v.

UNIVERSITY OF ILLINOIS AT URBA-
NA–CHAMPAIGN COOPERATIVE EX-
TENSION SERVICE, Defendant.

No. 96–1317.

United States District Court,
C.D. Illinois.

July 11, 1997.

Howard W. Feldman, Bradley Roger Bucher, Feldman & Wasser, Springfield, IL, for Karen Gehrt.

Fred K. Heinrich, Elaine Massock, Heyl Royster Voelker & Allen, Urbana, IL, for University of Illinois at Urbana–Champaign Cooperative Extension Service.

Sharon A. Seeley, U.S. Dept. of Justice, Civil Rights Div., Washington, DC, for U.S.A.

## ORDER

McDADE, District Judge.

Before the Court are Defendant's Objections [Doc. # 19] to the Report and Recommendation of the Magistrate Judge [Doc. # 18] denying in part and granting in part Defendant's Motion to Dismiss [Doc. # 2].

In short, Plaintiff Karen Gehrt filed a four-count Complaint against Defendant University of Illinois at Urbana–Champaign Cooperative Extension Service alleging: (I) sexual harassment under Title VII; (II) violations of the Equal Pay Act; (III) age discrimination under the ADEA; and (IV) retaliation under Title VII. Defendant filed a motion to dismiss all counts of the Complaint on the following bases: (1) all counts were barred by the Eleventh Amendment; (2) the Complaint lacked a sufficient factual basis; (3) the Complaint requested relief which could not be awarded; (4) Plaintiff failed to exhaust her administrative remedies; and (5) the limitations period had expired on some of the claims presented. Because one of the asserted bases for dismissal was Defendant's Eleventh Amendment immunity, the United States Government intervened in the lawsuit to brief that issue.

The Magistrate Judge issued his Report and Recommendation on May 22, 1997, recommending that all prayers for punitive damages should be stricken from the Complaint but that the motion to dismiss should be denied in all other respects. Defendant objected to the Magistrate Judge's recommendations regarding Eleventh Amendment immunity, exhaustion of administrative remedies, timeliness of administrative remedies, and timeliness of Plaintiff's claims under the Equal Pay Act. Pursuant to 28 U.S.C.

§ 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the Court shall make a *de novo* determination of those portions of the Report and Recommendation to which timely objections were made.

### Eleventh Amendment Immunity

■ The Court agrees with the Magistrate Judge's well-reasoned and well-researched decision that none of Plaintiff's claims are barred by the Eleventh Amendment.[1] Both precedent and reason dictate such a result. Initially, the Court rejects Defendant's interpretation of the two elements for Congressional abrogation of sovereign immunity set forth in *Seminole Tribe of Florida v. Florida*, 517 U.S. 609, ——, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996). Under that decision, the Court need ask only two questions: (1) whether Congress has unequivocally expressed its intent to abrogate the immunity, and (2) whether Congress has acted pursuant to a valid exercise of power. *Id.*

■ Defendant argues that the second element requires Congress to have expressly passed the legislation pursuant to the Fourteenth Amendment. Defendant draws support for this argument from a portion of *Seminole Tribe* which states: "[O]ur inquiry into whether Congress has the power to abrogate unilaterally the States' immunity from suit is narrowly focused on one question: *Was* the Act in question *passed* pursuant to a constitutional provision granting Congress the power to abrogate?" (emphasis added). However, nothing in this isolated passage dictates such a result. The term "passed" may simply denote the actual passage of the legislation, not the intent of Congress to abrogate Eleventh Amendment immunity through a particular constitutional provision.

There is ample precedent to support the Court's understanding of this second element. "The question of the constitutionality of actions taken by Congress does not depend on recitals of the power which it undertakes to exercise." *Woods v. Cloyd W. Miller, Co.*, 333 U.S. 138, 144, 68 S.Ct. 421, 424, 92 L.Ed. 596 (1948). The Court need only discern some legislative purpose or factual predicate to support the exercise of the "ap-

propriate legislation" clause of the Fourteenth Amendment. *EEOC v. Wyoming*, 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983). This does not mean that Congress need actually recite the words "section 5" or "Fourteenth Amendment" or "equal protection." *Id.* In absence of an explicit statement by Congress negating its power under the Fourteenth Amendment, the crucial inquiry is whether the objectives of the Act were within the scope of the Fourteenth Amendment. *Mills v. State of Maine*, 118 F.3d 37, 43–44 (1st Cir.1997); *EEOC v. Elrod*, 674 F.2d 601, 608 (7th Cir. 1982). *See, e.g., Fullilove v. Klutznick*, 448 U.S. 448, 476–78, 100 S.Ct. 2758, 2773–75, 65 L.Ed.2d 902 (1980) (upholding legislation under the Fourteenth Amendment even though statute and legislative history did not refer to it); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 453 n. 9, 96 S.Ct. 2666, 2670 n. 9, 49 L.Ed.2d 614 (1976) (relying upon legislative history to reconstruct probable intent of Congress in relying on Fourteenth Amendment).

Indeed, Defendant's interpretation confuses the first and second prongs of the *Seminole Tribe* test by incorporating the intent element of the first factor into the "appropriate legislation" requirement of the second. However, the first factor has never required Congress to specifically designate which provision of the Constitution it is using to abrogate the State's sovereign immunity; it must only express "its intent to abrogate" in the Act itself. *Seminole Tribe*, 517 U.S. at ——, 116 S.Ct. at 1123. Thus, even in *Seminole Tribe*, the Court found a clear legislative intent to abrogate the States' immunity under the Indian Gaming Regulatory Act simply because Congress had made "numerous references to the 'State'" in the text of the statute. *Id.* at —— – ——, 116 S.Ct. at 1123–24.

That being said, the Court must now address Congress' abrogation of each of the statutes at issue in this case under the two-part test set forth in *Seminole Tribe:* the Age Discrimination in Employment Act

---

1. The Court also commends the United States Government for its fine job in briefing the com-

plex issues discussed herein.

(ADEA), the Equal Pay Act (EPA), and the Civil Rights Act of 1991. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984); *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 337 (6th Cir.1990).

### Age Discrimination in Employment Act

■ Ample precedent from both the Seventh Circuit and other circuit courts of appeals dictate that both prongs of the *Seminole Tribe* test for abrogation have been met with respect to the ADEA.[2] *See Davidson v. Board of Governors of State Colleges and Univs. for Western Ill. Univ.,* 920 F.2d 441, 443 (7th Cir.1990); *Heiar v. Crawford County,* 746 F.2d 1190, 1193–94 (7th Cir.1984); *EEOC v. County of Calumet,* 686 F.2d 1249, 1251–53 (7th Cir.1982); *Elrod,* 674 F.2d at 604–09; *see also Hurd v. Pittsburg State Univ.,* 109 F.3d 1540, 1543–46 (10th Cir. 1997); *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 698–701 (1st Cir.1983). Most recently, Chief Judge Posner in *Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 487 (7th Cir.1997), reinforced the continuing vitality of these cases after *Seminole Tribe* in finding that the Americans with Disabilities Act sufficiently abrogated sovereign immunity under the Fourteenth Amendment. If Defendant wishes to challenge these rulings, it must do so before the Seventh Circuit directly.

The Court does wish to address two specific arguments raised by Defendant. Defendant first argues that because the ADEA amendments of 1974 were passed pursuant to the Commerce Clause, they cannot now be presumed to have been passed pursuant to the Fourteenth Amendment. This is wrong for at least three reasons. First, there was no explicit reference by Congress to a specific constitutional provision as authority to extend coverage of the ADEA to the States. *Elrod,* 674 F.2d at 605. Neither of the cases cited by Defendant held that the ADEA amendments of 1974 actually were passed pursuant to the Commerce Clause, only that Congress *could have* done so as a valid exercise of its legislative power. *See Gregory v. Ashcroft,* 501 U.S. 452, 467–68, 111 S.Ct.

2395, 2404–05, 115 L.Ed.2d 410 (1991); *Wyoming,* 460 U.S. at 243, 103 S.Ct. at 1064.

Second, as discussed above, there is no requirement under *Seminole Tribe* that Congress attribute its intent to abrogate to any specific provision of the Constitution. It is Congress' *power* to pass "appropriate legislation" under the Fourteenth Amendment that matters. *Wyoming,* 460 U.S. at 243 n. 18, 103 S.Ct. at 1063 n. 18; *Woods,* 333 U.S. at 144, 68 S.Ct. at 424. Thus, Defendant's discussion of the first element requiring a "simple but stringent test" for Congress' intent to abrogate, *Seminole Tribe,* 517 U.S. at —, 116 S.Ct. at 1123, is irrelevant to the discussion whether Congress had the *power* to abrogate sovereign immunity pursuant to the Fourteenth Amendment. *Id.* at —, 116 S.Ct. at 1124.

Third, nothing prohibits Congress from passing legislation pursuant to the power given it in more than one provision of the Constitution. *See, e.g., Wyoming,* 460 U.S. at 243, 103 S.Ct. at 1064 (refusing to decide whether the ADEA could be upheld under the Fourteenth Amendment as well as the Commerce Clause); *Crawford,* 115 F.3d at 487 ("the Americans with Disabilities Act is an exercise of Congress's power under section 5 of the Fourteenth Amendment (as well as under the commerce clause))"; *Elrod,* 674 F.2d at 603 n. 1 (finding that the ADEA would be a constitutional exercise of Congress' Commerce Clause powers as well as under the Fourteenth Amendment).

Defendant's second argument is that Congress cannot protect certain classes of persons by enacting legislation pursuant to the Equal Protection Clause if the Supreme Court has not already created a suspect class subject to heightened scrutiny (i.e. race or gender). Defendant relies upon *Wilson–Jones v. Caviness,* 99 F.3d 203, 210 (6th Cir.1996), in which the Sixth Circuit held that the Fair Labor Standards Act (FLSA) could not have been passed pursuant to the Fourteenth Amendment as it was aimed to remedy "a mundane 'discrimination' between private- and public-sector workers" which did

---

2. The Court will not repeat here the specific analysis of the statute performed by the Magistrate Judge.

not touch "central, obvious Fourteenth Amendment concerns." The court reasoned:

We think it best to "regard as an enactment to enforce" the Equal Protection Clause, in the absence of explicit comment by Congress, only efforts to remedy discrimination against a class of persons that Fourteenth Amendment jurisprudence has already identified as deserving special protection.

*Id.* The court noted, however, that its "opinion might be different if Congress made findings that a particular group needed legal protection to remedy some sort of invidious discrimination not directly addressed by federal precedent." *Id.* at 210 n. 4.

Defendant asserts that because the Supreme Court has always subjected age to rational basis rather than heightened scrutiny review, *Gregory*, 501 U.S. at 470, 111 S.Ct. at 2406; *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976), it too should be subject to the rationale of *Wilson–Jones* that Congress cannot legislate about that class of persons pursuant to the Equal Protection Clause. However, Defendant ignores the caveat set forth by the *Wilson–Jones* court that Congressional findings as to the need for protection of a group subject to invidious discrimination would be enough to invoke Congress' power under the Fourteenth Amendment. 99 F.3d at 210 n. 4. That is precisely the case we have here.

In passing the 1974 amendments to the ADEA, both the House and Senate committees expressly found that "[d]iscrimination based on age ... can be as great an evil in our society as discrimination based on race or religion ... Especially in the employment field, discrimination based on age is cruel and self-defeating; it destroys the spirit of those who want to work and it denies the National [sic] the contribution they could make if they were working." *Elrod*, 674 F.2d at 605 *citing* S.Rep. No. 93–690, 93d Cong., 2d Sess. 55 (1974); H.R.Rep. No. 93–913, 93d Cong., 2d Sess., *reprinted in* (1974) U.S. Code Cong. & Ad. News 2811, 2849. Because of these specific findings, Congress could validly pass its age discrimination legislation pursuant to the Equal Protection Clause even under the rationale of *Wilson–Jones*.

Defendant also believes that its theory of heightened scrutiny review is supported by the Supreme Court's decision in *Oregon v. Mitchell*, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), as discussed in a recent law review article by Professor Ronald D. Rotunda of the University of Illinois College of Law. In *Oregon*, the Court considered challenges to various provisions of the Voting Rights Act Amendments of 1970 which lowered the minimum voting age in state and local elections from 21 years of age to 18 under the rationale of age discrimination under the Equal Protection Clause. Professor Rotunda asserts that a majority of the Justices in *Oregon*—Harlan, Black, Stewart, Burger and Blackmun—arrived at the same conclusion that Congress could not independently define the reach of the Equal Protection Clause by creating new suspect classes subject to legislative protection.

While the Court finds Professor Rotunda's argument interesting, it must ultimately disagree that this was the import of *Oregon*. It is true that the five justices listed above agreed that the Equal Protection Clause could not justify Congress' lowering of the voting age from 21 to 18. However, as the Government points out, Justices Black and Harlan relied upon considerations relevant to *voter qualifications* in particular when they found that Congress did not have the authority to lower the voting age. *Id.* at 130, 200–09, 91 S.Ct. at 267–68, 302–08. Thus, those two opinions cannot be used to justify a broad prohibition on Congress' power to enact legislation pursuant to the Equal Protection Clause of the Fourteenth Amendment.

The three remaining Justices—Justice Stewart, Chief Justice Burger, and Justice Blackmun—do not constitute a majority which could have a precedential impact on future cases. Moreover, it is unclear whether even they intended to proscribe Congressional power as broadly as Defendant contends. Justice Stewart noted in his concurring opinion that the Fourteenth Amendment itself provides for sanctions where the right to vote "is denied to any of the male inhabitants of such State, *being twenty-one years of age*, and citizens of the United States ..." *Id.* at 295 n. 14, 91 S.Ct.

at 349 n. 14 (emphasis added by Justice Stewart). Thus, it was virtually impossible for Congress to have relied upon the Fourteenth Amendment as a basis for lowering the voting age *below* 21. *Id.* This idiosyncratic context in which the opinion was being written may provide the distinction between *Oregon* and other cases which have failed to follow it.

Indeed, as Professor Rotunda laments, the lower federal courts after *Oregon* have paid no heed to this aspect of the opinion. Certainly, the Seventh Circuit has not felt constrained by this fragmented decision and in *County of Calumet*, indicated its rejection of such an idea:

> A construction of s 5 that would require a judicial determination that the enforcement of the state law precluded by Congress violated the [Fourteenth] Amendment, as a condition of sustaining the congressional enactment, would depreciate both congressional resourcefulness and congressional responsibility for implementing the Amendment. It would confine the legislative power in this context to the insignificant role of abrogating only those state laws that the judicial branch was prepared to adjudge unconstitutional, or of merely informing the judgment of the judiciary by particularizing the "majestic generalities" of s 1 of the Amendment.
>
> Under *[Katzenbach v.] Morgan,* [384 U.S. 641, 651, 86 S.Ct. 1717, 1723–24, 16 L.Ed.2d 828 (1966) ], the proper question is whether the ADEA as applied to state and local government is "appropriate" legislation under section 5 to enforce the Equal Protection Clause. Legislation is appropriate if it is "plainly adapted" to enforce the Fourteenth Amendment and is "not prohibited by but is consistent with the 'letter and spirit of the constitution.'" The appellants do not seriously challenge the ability of the ADEA to satisfy this test. This court recently held in *Elrod* that the law is plainly sufficient. Congress is given great deference in selecting the measures necessary, and appropriate to secure the guarantees of the Fourteenth Amendment.

686 F.2d at 1252 (internal citations omitted). Thus, at least to this Court, the issue has become quite academic.

## Equal Pay Act

■ The Court finds that the Magistrate Judge has adequately set forth the reasons why both prongs of the *Seminole Tribe* abrogation test have been met with respect to the EPA. This view has recently been confirmed by the Sixth Circuit in *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833 (6th Cir. 1997). the only court of appeals to have reached the issue after *Seminole Tribe*.

Once again, Defendant challenges this ruling on the basis that the EPA was enacted pursuant to the Commerce Clause, not the Fourteenth Amendment. As discussed above, this argument must fail because the second element of *Seminole Tribe* focuses on Congress' *power* to enact the legislation pursuant to the Fourteenth Amendment, not its intent to do so. *Wyoming*, 460 U.S. at 243 n. 18, 103 S.Ct. at 1064 n. 18; *Woods*, 333 U.S. at 144, 68 S.Ct. at 424. Moreover, even if it is true that the EPA was passed pursuant to Congress' commerce clause powers, *Marshall v. City of Sheboygan*, 577 F.2d 1, 2 (7th Cir.1978), this does not prevent Congress from having acted under the Fourteenth Amendment also. *Wyoming*, 460 U.S. at 243, 103 S.Ct. at 1064; *Crawford*, 115 F.3d at 487. The Seventh Circuit in *Marshall* even noted that two other courts of appeals had upheld the legislation as a valid exercise of power pursuant to the Fourteenth Amendment but saw no need to reach that question. 577 F.2d at 6 n. 19. Indeed, the EPA and 1974 Amendments to the ADEA have very much in common regarding the manner in which they were enacted. It follows that the Seventh Circuit would treat the two statutes consistently as exhibiting Congress' intent and power to abrogate sovereign immunity under the Fourteenth Amendment.

## Civil Rights Act of 1991

■ Again, the Court agrees with the Magistrate Judge that the Civil Rights Act of 1991, 42 U.S.C. § 1981a, properly abrogates the State's sovereign immunity. In *Fitzpatrick*, the Supreme Court found that the 1972 Amendments to Title VII of the Civil Rights Act of 1964, which allowed private plaintiffs to recover certain equitable money damages against the State, such as backpay

and attorney's fees, abrogated states' sovereign immunity pursuant to the Fourteenth Amendment. 427 U.S. at 447–48, 96 S.Ct. at 2667–68. The Court found that Congress had the power to authorize federal courts to award such damages against the State as a means of enforcing the substantive guarantees of the Fourteenth Amendment. *Id.* at 448, 96 S.Ct. at 2667–68.

At issue here is the Civil Rights Act of 1991 which, among other things, expanded the remedies of Title VII to include compensatory damages "against a respondent who engaged in unlawful intentional discrimination" under Title VII. Defendant contends that this statute meets neither of the two prongs set out in *Seminole Tribe.* First, he asserts that the statute does not contain a clear intent to abrogate sovereign immunity. However, as pointed out by the district court in *Blankenship v. Warren County, Va.,* 931 F.Supp. 447, 450 (W.D.Va.1996), section 1981a must be read in conjunction with Title VII itself in order to have any real meaning. While technically a separate statutory provision, the preamble to section 1981a makes clear that it was intended to amend Title VII. *Id.* The only reasonable way in which to define the term "respondent" in section 1981a is to turn to Title VII which defines respondent as including State employers. *Id.* Thus, the two statutes must be read *in pari materia* and the requisite intent to abrogate is present.

Defendant also challenges section 1981a as not being "appropriate legislation" under the Fourteenth Amendment because it imposes a direct financial burden on state coffers, rather than simply proscribing conduct. However, this is precisely what the 1972 Amendments to Title VII accomplished, and the Supreme Court in *Fitzpatrick* upheld them as an appropriate means of enforcing the substantive guarantees of the Fourteenth Amendment. 427 U.S. at 448, 96 S.Ct. at 2667–68. There is simply no basis to distinguish between the equitable monetary damages at issue in *Fitzpatrick* and the compensatory damages at issue here; both serve the common purpose of punishing and deterring

States from violating the equal protection guarantee of the United States Constitution.

*Seminole Tribe* itself makes clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether Congress has the power to abrogate States' immunity under the Eleventh Amendment. ——— U.S. at ———, 116 S.Ct. at 1124. Thus, Defendant's citation to *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), and *Hess v. Port Auth.,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), is inapposite. Those cases are also distinguishable. *Green* involved the propriety of retrospective monetary relief in actions against individual state officials, 474 U.S. at 68, 106 S.Ct. at 425–26 *citing Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), but not in actions against the State itself, as is the case here. Likewise, *Hess* involved the question whether the Defendant corporation could be considered a "State" agency at all for purposes of Eleventh Amendment immunity. 513 U.S. at 52, 115 S.Ct. at 406. Here, there is no question that the University of Illinois is a State actor subject to the Eleventh Amendment. Thus, the question of abrogation was never broached in those cases.

In sum, the Court adopts the Magistrate Judge's recommendation that Congress abrogated States' sovereign immunity under each of the statutes at issue here. Therefore, Plaintiff suit may proceed on all Counts.

### *Exhaustion and Timeliness of Administrative Remedies* [3]

Under both Title VII and the ADEA, a plaintiff in a deferral State such as Illinois is required to file an EEOC charge within 300 days of the time that she knew or should have known of the facts that would support such a charge of discrimination. *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 445 (7th Cir.1994); *Kuemmerlein v. Board of Educ. of Madison Metro. Sch. Dist.,* 894 F.2d 257, 261 (7th Cir.1990); 29 C.F.R. § 1601.13 (Title VII), § 1626.7 (ADEA). Plaintiff here concedes that "her damages are limited to

---

**3.** Pursuant to Local Rule 7.1(B), the Magistrate Judge did not reach the merits of this issue (or the EPA limitations issue) because the parties had not cited to any case authority in support of

their respective positions. While the Court agrees that the parties should have briefed the motion more fully, it sees no need to delay resolution of these issues.

events which occurred within 300 days prior to filing the original charge of discrimination." Unlike the Magistrate Judge, the Court sees no distinction between the term "damages" as opposed to "claims." The upshot of Plaintiff's statement is that she is not seeking relief for any discriminatory actions that occurred more than 300 days prior to the filing of her charge. The Court will hold Plaintiff to that concession.

■ Aside from the limitations issue, there is another restriction imposed upon a plaintiff in federal court: generally, she may bring only those claims that were included in her EEOC charge. *Harper v. Godfrey Co.,* 45 F.3d 143, 147–48 (7th Cir.1995); *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). Although this rule is not jurisdictional, it is a condition precedent with which Title VII plaintiffs must comply. *Cheek,* 31 F.3d at 500.

■ The Seventh Circuit allows a plaintiff to raise in her complaint all grounds that are: (1) "like or reasonably related" to those brought in the original administrative charge, and (2) can be reasonably expected to grow out of an administrative investigation of those charges. *Harper,* 45 F.3d at 148; *Cheek,* 31 F.3d at 500; *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (en banc). The first prong requires that there be a factual relationship between the claims; they must, at a minimum, describe the same conduct and implicate the same individuals. *Harper,* 45 F.3d at 148; *Cheek,* 31 F.3d at 501. Moreover, the discriminatory conduct must be described with some degree of specificity in the charge. *Cheek,* 31 F.3d at 502. The second part of the test necessarily requires some amount of speculation as to what the EEOC might or might not discover in the course of an investigation. *Id.* at 500.

Here, Plaintiff filed her original charge on December 2, 1994, checking the boxes for discrimination based on race, sex, age and retaliation. Plaintiff described the discrimination as commencing on December 1, 1992, and continuing through the present date. Plaintiff asserted that she had been discriminated against under Title VII, the ADEA and the EPA on the following three bases: "(1) The Respondent allowed a male co-worker to continually harass me; (2) The Respondent pays a male co-worker more than me; and (3) I was removed from my job and replaced by a young, Black female."

More specifically, Plaintiff alleged as follows:

I began working for the Respondent in 1973 and currently work as a Nutrition Educator. Since November, 1991 until July, 1994 a male co-worker continually harassed me.[4] I was also paid less money than he. In July, 1994 I was removed from the position of EFNEP Educator and in August, 1994 I was informed I would be issued a terminal contract with the Respondent unless I can find other employment. On several occasions and most recently on April 5, 1994 I have complained to the Respondent about the discrimination and harassment I have received.

The Respondent has taken no action against the co-worker who harassed me. The Respondent stated he made more than me because he has moved his family three or four times. The Respondent removed me from the position of EFNEP Educator because of financial and management problems. The Respondent stated I would be given a terminal contract because I currently hold an interim position.

On May 15, 1995, Plaintiff amended her charge to include the following sentence at the end of the first paragraph: "On March 27, 1995, I was advised of my termination because my 95–96 contract had not been renewed."

Plaintiff's Complaint in this Court alleges as follows. Since March 1973, Plaintiff Karen Gehrt ("Gehrt") has worked in some capacity for Defendant University of Illinois Cooperative Extension Service (ICES). From September 1982 through September 1994, she had the title "Extension Educator—Limited Resource Families" for the Expanded Food and Nutrition Education Program (EFNEP). The EFNEP program is

---

**4.** Nowhere in her charge does Plaintiff specifically mention who this "co-worker" was. In addition, she never stated who "Respondent" was supposed to be. The charge names only the University of Illinois Cooperative Extension Service.

a federally funded program aimed at educating low income and minority families in Champaign County, Illinois.

In 1992, ICES hired Dennis Thompson ("Thompson") to be the Unit Leader of the Champaign County unit responsible for giving leadership to the local education mission.[5] Thompson was given this position despite his previous interpersonal problems and discriminatory conduct toward a female co-worker. According to Gehrt, ICES hired Thompson in a conspiracy to sabotage the EFNEP program and her employment with ICES. Thompson immediately began a pattern of "harassment, intimidation and defamation" against Gehrt. He filed numerous false charges against Gehrt with their supervisor, Regional Director Bea Bagby ("Bagby"). Gehrt confronted Thomas, Bagby, Bill McNamara (Assistant to the Director of ICES), and her "various supervisors" in an attempt to put an end to Thomas' conduct. As a result, both Gehrt and Thomas were removed from their positions. Thus, in July 1994, Gehrt was removed from the EFNEP program and in September 1994, was made the Extension Educator for the Nutrition and Wellness program. After serving in that position for less than 24 months, her employment with ICES was terminated.

In her sex discrimination claim in Count I, Plaintiff asserts the following specific instances of Defendant's discriminatory conduct toward her:

(a) Beginning in 1992, her male supervisor gave her below average performance reviews and pay increases so that she was earning only 80% of the average male's pay in the same position;

(b) At the time Thompson was hired, he was paid nearly 50% more than Gehrt;

(c) When Thompson and Gehrt were transferred from their positions, Gehrt was placed into a short term job which would end in her unemployment, but Thompson was given one year of "study leave" at full pay;

(d) As a basis for transferring her to the new position, ICES falsely informed

Gehrt that the EFNEP program had severe financial problems;

(e) ICES Director Donald L. Uchtmann ("Uchtmann") made performance evaluations of Gehrt on a scale not authorized or defined by any ICES policy and not used on any other ICES employee;

(f) ICES Regional Director Bagby witnessed Thompson's discriminatory conduct but did nothing to deter it; and

(g) ICES Regional Director Bagby and other ICES officials intentionally misrepresented to Gehrt the number of EFNEP employees and EFNEP's budgetary constraints so as to make it more difficult for Gehrt to carry out her job successfully.

Grounds (a) and (b) are "like or reasonably related" to the allegation in Plaintiff's charge that she "was paid less money than" her male co-worker, Thomas. There is no requirement that Plaintiff assert in her charge the name of each male employee who receives greater pay for equal work. The names of these other employees may have arisen from the EEOC's reasonable investigation of the pay disparity. However, the allegation in ground (a) relating to "below average performance reviews" should be stricken because it is not discussed in the EEOC charge. This fact might be relevant to show pretext at the summary judgment stage, but it cannot form the basis for a separate claim of discrimination here.

Grounds (c) is also "like or reasonably related" to the allegation that in July 1994, Plaintiff was removed "from the position of EFNEP Educator because of financial and management problems" and Respondent stated that she "would be given a terminal contract because [she] currently h[e]ld an interim position." A reasonable EEOC investigation might have uncovered what happened to Thomas after he was transferred. However, ground (d)'s mention of ICES's false statements to Plaintiff about the EFNEP program's finances is only relevant to

5. Under the ICES system, unit leaders (such as Thompson) and extension educators (such as Gehrt) are on a parallel hierarchy.

the issue of pretext and cannot form a separate basis for sex discrimination under Title VII.

 Ground (e) is also beyond the scope of the charge. As indicated above, nothing in the charge indicates that Defendant discriminated against her with regard to her performance evaluations. While such an allegation might incidentally touch upon the wage discrimination alleged by Plaintiff, it is too attenuated to have been fairly included in the language of the charge. Of course, Defendant's use of disparate performance standards may be used to show pretext.

 Ground (f) is "like or reasonably related" to the allegation in Plaintiff's charge that "[o]n several occasions and most recently on April 5, 1994 I have complained to the Respondent about the discrimination and harassment I have received ... The Respondent has taken no action against the co-worker who harassed me."

 Finally, ground (g) is beyond the scope of Plaintiff's charge because nowhere in the language of the charge does it state that any official at ICES intentionally misrepresented information to her so as to disrupt Plaintiff's ability to carry out the EF-NEP program. Thus, in sum, grounds (d), (e), (g) and a portion of ground (a) should be stricken from Count I of the Complaint.[6]

 Count III realleges the allegations in Count I and asserts age discrimination in that: (1) Gehrt, who was 45 at the time of the charge, was replaced by a 25 year old, and (2) she was denied employment with the University in three other positions to which she applied because of her age. The first of these allegations is contained in the charge where it says, "I was removed from my job and replaced by a young, Black female." However, the second contention about being denied other job opportunities with the University must be stricken because it is contained nowhere in the language of the charge.

 Count IV realleges the allegations in Counts I through III and asserts that Defendant retaliated against her when she complained about such discriminatory conduct.

First, she asserts that Defendant retaliated against her by assigning her to a position which would ultimately terminate within 24 months. In light of Plaintiff having checked the box for "retaliation" on the charge, this allegation is fairly encompassed by the language in the charge which asserts that Plaintiff complained to Defendant about the discrimination and was subsequently removed from her position as EFNEP Educator and "given a terminal contract." Plaintiff also asserts the following additional bases for her claim of retaliation:

(a) She was assigned to a small, shared office and only after repeatedly asking for office space;

(b) Champaign County staff were instructed not to work with Plaintiff;

(c) She was provided no resources, educational material or equipment budget to perform her new assignments;

(d) She was given a below average salary increase despite completing her doctorate degree;

(e) Mail addressed to her was opened and held for 3 to 4 weeks before receipt; and

(f) ICES defamed her by stating that Plaintiff was suspected of having mental problems.

However, none of these allegations were included in the EEOC charge at all, much less as a result of retaliation for complaining about Defendant's discriminatory conduct. Thus, all of these allegations must be stricken from Plaintiff's Complaint.

### Timeliness of EPA Claims

Plaintiff concedes that her Equal Pay Act claim in Count II is subject to the "applicable Statute of Limitations." However, she fails to address whether the applicable limitations period is the three year period for "willful" violations or the two year period for "non-willful" violations under the Act. 29 U.S.C. § 255(a). Without deciding the issue conclusively, the Court notes that Count II alleges that Defendant "acted with malice or reckless indifference to Plaintiff's federally protected rights." While this language was

---

**6.** As for Count II, there is no requirement under the Equal Pay Act that Plaintiff exhaust her ad-

ministrative remedies (see discussion below). Thus, the instant analysis does not apply.

probably included to demonstrate the need for punitive damages,[7] it also points to the willful nature of the acts committed by Defendant. In addition, Count II incorporates the allegations of the Title VII sex discrimination claim in Count I. That claim clearly alleges that Defendant's conduct was "willful." Thus, there remains the distinct possibility that Plaintiff is alleging a willful violation of the EPA here. Should Plaintiff wish to proceed on the basis of a "willful" violation, she must amend her Complaint to so indicate within the next 14 days.

 Regardless of which limitations period is appropriate, Plaintiff contends that the period should run from two or three years prior to the filing of her 1994 EEOC charge rather than her Complaint filed in 1996. The Court disagrees. There is no exhaustion requirement for administrative remedies under the Equal Pay Act. *County of Washington v. Gunther*, 452 U.S. 161, 175 n. 14, 101 S.Ct. 2242, 2250 n. 14, 68 L.Ed.2d 751 (1981); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1527 (11th Cir.1992). Plaintiff had no obligation to file her EPA claim with the EEOC and could have filed it in this Court at any time within the limitations period. Thus, the filing of the EEOC charge does not toll the statute of limitations for EPA violations. *Perera v. Flexonics, Inc.*, 727 F.Supp. 406, 411–12 (N.D.Ill.1989); *Feng v. Sandrik*, 636 F.Supp. 77, 82–83 (N.D.Ill. 1986); *Erickson v. New York Law Sch.*, 585 F.Supp. 209, 214 (S.D.N.Y.1984); *Hoth v. Grinnell College*, 1980 WL 302, at *2 (S.D.Iowa 1980); *see also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975) (refusing to toll the limitations period under 42 U.S.C. § 1981 because the plaintiff had filed a Title VII EEOC charge under the same facts). Thus, whatever limitations period applies here, it must be counted backwards from the date of filing of the Complaint (i.e. May 9, 1996).

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Objections [Doc. # 19] are **GRANTED in part** and **DENIED in part**. The Report and Recommendation of the Magistrate Judge [Doc. # 18] is **ADOPTED in part** and **REJECTED in part**. Defendant's Motion to Dismiss [Doc. # 2] is **GRANTED in part** and **DENIED in part**. The following portions of Plaintiff's Complaint are **STRICKEN**:

(1) all prayers for punitive damages;

(2) paragraph 29, subsections (d), (e) and (g), and the phrase "below average performance reviews and" in subsection (a);

(3) paragraph 42; and

(4) paragraph 48, subsections (a) through (f).

IT IS FURTHER ORDERED that Plaintiff shall file a First Amended Complaint reflecting these changes within fourteen (14) days of being served with this Order. If Plaintiff wishes to allege a "willful" violation of the Equal Pay Act in Count II, she must affirmatively do so in the Amended Complaint. This case is referred to Magistrate Judge Kauffman for further proceedings.

### REPORT AND RECOMMENDATION

KAUFFMAN, United States Magistrate Judge.

Now before the court is the defendant's motion to dismiss plaintiff's complaint (# 2). The motion is fully briefed, and pursuant to Local Rule 72.1 the district judge has referred the matter to me for a report and recommendation. After carefully considering all of the submissions of the parties, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be granted in part and denied in part.

Plaintiff, a 47–year old female, alleges that her employer, the defendant, discriminated against her on the basis of her gender and her age, and then retaliated when she complained, in violation of the Age Discrimination in Employment Act (Count III), the Equal Pay Act (Count II), and Title VII as amended by 42 U.S.C. § 1981a (Counts I and IV). Defendant has moved to dismiss, asserting as a bar to all four claims the State of Illinois' Eleventh Amendment immunity from suit in federal court. In addition, defendant

---

7. The Court agrees with the Magistrate Judge's ruling that punitive damages are unavailable here against a State entity such as the University of Illinois.

argues that all four counts fail to state claims because there are no facts to support the legal theories on which they are based. Defendant also argues that the complaint seeks relief which cannot be awarded and that plaintiff has failed to exhaust administrative remedies as to some of the allegations. Finally, defendant argues that the Title VII and ADEA claims are time-barred in part.

Upon challenge to the constitutionality of federal statutes, the U.S. Attorney General was notified and has intervened. The United States and the plaintiff have responded to the Eleventh Amendment issues raised by the defendant, while only the plaintiff has responded to the other arguments.

## I. MOTIONS TO DISMISS

### A. RULE 12(b)(1) Motions To Dismiss

The Eleventh Amendment's proscription of suits against a State in federal court is a jurisdictional bar. *Crosetto v. State Bar of Wisconsin,* 12 F.3d 1396 (7th Cir.1993), *cert. denied,* 511 U.S. 1129, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994). *See also, Seminole Tribe of Florida v. Florida,* 517 U.S. 609, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (the Court dismissed for lack of subject matter jurisdiction after finding immunity under the Eleventh Amendment); *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974); *Wilson–Jones v. Caviness,* 99 F.3d 203, 206 (6th Cir.1996).

Rule 12(b)(1) requires that an action be dismissed if the court lacks jurisdiction over the subject matter of the suit. *Montgomery Ward & Co. v. Warehouse, Mail Order, Office, Technical & Professional Employees Union, Local 743,* 911 F.Supp. 1094, 1099 (N.D.Ill.1995). When ruling on a motion to dismiss based upon a claim of sovereign immunity or lack of subject matter jurisdiction, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of plaintiff. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995); *Rueth v. EPA,* 13 F.3d 227, 229 (7th Cir.1993).

In the absence of evidence raising a fact question as to jurisdiction, the Court's inquiry is limited. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Although a factual dispute over jurisdiction should prompt the court to hold an evidentiary hearing and weigh conflicting evidence, *see, Bowyer v. U.S. Dep't of Air Force,* 875 F.2d 632, 635 (7th Cir.1989), where the jurisdictional facts are substantially simple and uncontroverted, as they are here, the court may rule on a 12(b)(1) motion without pausing to make findings on any disputed fact questions that may exist. *See, Commodities Export Co. v. U.S. Customs Serv.,* 888 F.2d 431, 436 (6th Cir.1989).

### B. RULE 12(b)(6) Motions To Dismiss

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gould v. Artisoft, Inc.,* 1 F.3d 544, 548 (7th Cir.1993). Rather, it should be construed broadly and liberally in conformity with the mandate in Rule 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Hishon v. King,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *MCM Partners v. Andrews–Bartlett & Assoc., Inc.,* 62 F.3d 967, 969 (7th Cir.1995); *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75 (7th Cir.1992); *Yeksigian v. Nappi,* 900 F.2d 101 (7th Cir.1990). In addition, a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648 (7th Cir.1984). If the plaintiff's claim as plead is "without legal consequence," dismissal is proper; *Grzan v. Charter Hospital,* 104 F.3d 116, 119 (7th Cir.1997)

## II. THE ELEVENTH AMENDMENT

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citi-

zens of another State, or by Citizens or Subjects of any Foreign State.

When written, the Eleventh Amendment was based on certain presuppositions that, over the course of time, have been interpreted by the Supreme Court as expanding the meaning of this Amendment beyond its literal terms. *Seminole Tribe* at ——, 116 S.Ct. at 1122. Thus, the Eleventh Amendment means as a general rule that a State is immune from suit in federal court.

The Amendment applies as well to agencies or entities that are arms or alter egos of the State, because under those circumstances the State is the real party in interest. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Edelman,* 415 U.S. 651 at 662, 94 S.Ct. 1347 at 1355; *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142–46, 113 S.Ct. 684, 686–89, 121 L.Ed.2d 605 (1993); *Thiel v. State Bar of Wisconsin,* 94 F.3d 399, 400 (7th Cir.1996).

While actions for monetary damages against State officials in their official capacity are barred by the Eleventh Amendment, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), actions for monetary damages against State employees in their individual capacity are not. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

In *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court created an important exception to immunity, holding that suits against State employees in their official capacities do not run afoul of the Eleventh Amendment if they seek prospective injunctive relief from threatened or continuing violations of the Constitution or federal law. *See also, Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Booth v. Maryland,* 112 F.3d 139 (4th Cir.1997); *Children's Healthcare Is A Legal Duty, Inc. v. Deters,* 92 F.3d 1412 (6th Cir.1996); *Vickery v. Jones,* 100 F.3d 1334 (7th Cir.1996); *In re SDDS, Inc.* 97 F.3d 1030 (8th Cir.1996); *Natural Resources Defense Council v. California Dep't of Transportation,* 96 F.3d 420 (9th Cir.1996). Compare *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (declaratory relief against State official for past violations of federal law barred as impermissible "end run" around the Eleventh Amendment).

There are other exceptions. States may consent to federal jurisdiction (for example, by participating in a federally funded program that explicitly requires consent for participation) or may waive their immunity (by conduct or by State law). Congress may also abrogate the States' immunity where there is a clear statement of congressional intent to abrogate and a valid exercise of Congressional power.

It is abrogation that is at issue in this case, an issue to which the Supreme Court spoke less than one year ago in *Seminole Tribe,* 517 U.S. 609, 116 S.Ct. 1114. In that case, the Court articulated—or clarified—the two part test required for abrogation: Congress must have clearly expressed its intent to abrogate and must have validly exercised power under § 5 of the Fourteenth Amendment.

The *Seminole Tribe* Court stated that Congress' intent to abrogate States' immunity must "be obvious from a clear legislative statement." *Id.* at ——, 116 S.Ct. at 1123. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171, (cited with approval in *Seminole Tribe,* 116 S.Ct. At 1123). The Court also reaffirmed *Dellmuth v. Muth,* 491 U.S. 223, 227–228, 109 S.Ct. 2397, 2399–2400, 105 L.Ed.2d 181 (1989) that evidence of intent to abrogate must be "unequivocal and textual." 517 U.S. at ——, 116 S.Ct. at 1123.

As demonstrated by *Seminole Tribe,* however, the intent need not be explicit but rather may be inferred if the text and structure of the legislation make the intent clear. In finding such clear intent, the *Seminole Tribe* Court noted the statutory language vesting jurisdiction in the district courts over causes of action "arising from the failure of a State" to perform certain statutory duties. *Id.* at —— ——, 116 S.Ct. at 1123–24. The statute set forth a remedial scheme that shifted the burden of proof to the State after the plaintiff met an initial burden of proof

and that provided certain remedies for various findings that a court might make against a State defendant. According to the Court, "numerous references to the 'State' ... make it indubitable that Congress intended through the Act to abrogate the States' sovereign immunity from suit." *Id.* The Court apparently attached no importance to the fact that the Act did not explicitly use the words Eleventh Amendment, sovereign immunity or abrogation.

Before *Seminole Tribe,* the Supreme Court had held that Congress had constitutional authority to abrogate Eleventh Amendment immunity under § 5 of the Fourteenth Amendment and under the Commerce Clause. In *Seminole Tribe,* the Court overruled its prior holding that the Commerce Clause provided such authority, finding that Article I powers could not be exerted to enlarge Article III jurisdiction, 517 U.S. at ——, 116 S.Ct. at 1128. Thus, it is necessary to examine—and where courts have previously found legitimate Commerce Clause power, to reexamine—the specific authority exercised by Congress in enacting any particular legislation in order to determine whether the exercise was valid.

Since *Seminole Tribe,* federal courts across the country have been asked to assess subject matter jurisdiction in light of the immunity provided by the Eleventh Amendment and the limitations on that immunity. The Seventh Circuit has described the immunity as "expansive," *Gorka by Gorka v. Sullivan,* 82 F.3d 772, 774 (7th Cir.1996) and parties have raised the issue in suits arising under statutes as varied as the Bankruptcy Code and the Americans with Disabilities Act.

In this case, the plaintiff has named as defendant the University of Illinois at Urbana–Champaign Cooperative Extension Service. The parties do not dispute that the defendant is an arm of the State of Illinois and thus entitled to the immunities of the Eleventh Amendment. What is disputed is whether the statutes forming the foundation for the cause of action meet the "clear statement" test for abrogation and whether those statutes were enacted pursuant to § 5 of the Fourteenth Amendment. The statutes at issue are: the Age Discrimination in Employment Act of 1967, the Equal Pay Act of 1963,

and Title VII as amended by the Civil Rights Act of 1991. Each will be considered in turn. *See, Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 337 (6th Cir.1990) (federal court must examine each claim to see if court's jurisdiction is barred by the Eleventh Amendment).

Before reaching the analysis for each of the statutes at issue, however, there is one more general Eleventh Amendment issue that must be addressed. Defendant also argues that there is a third part to the abrogation analysis, derived directly from the language of § 5 of the Fourteenth Amendment empowering Congress to enforce the Amendment by means of "appropriate" legislation. Relying on *Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996), the defendants argue that legislation based on sex discrimination or age discrimination is not "appropriate" and therefore Title VII, the EPA and the ADEA could not have been enacted under Fourteenth Amendment powers.

In *Wilson–Jones,* the court was evaluating the FLSA's minimum wage and overtime provisions in light of *Seminole Tribe;* none of the statutes at issue in the pending case were discussed. After defining "appropriate" as "adapted to carry out the objects the amendments have in view, ... tend[ing] to enforce submission to the prohibitions they contain and to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws," 99 F.3d at 208, the court concluded that enlarging the scope of the Fourteenth Amendment to the extent necessary to prevent "discrimination" against state employees, as compared to private sector employees, would be inconsistent with and destructive of the important policies of the Amendment.

In reaching that conclusion, the court acknowledged that elimination of discrimination on the basis of race or gender was universally recognized as appropriate. *Id.* at 210. I agree, and this eliminates this argument as to the EPA and Title VII, both of which clearly address sex discrimination. As to the ADEA, I believe discrimination on the basis of age is closer in kind to the type of discrimination encompassed by the Amendment than was the class examined in *Wilson–Jones.*

Thus, even if defendant is correct about the necessity of this third prong, it is to no avail. I would recommend that the motion based on this argument be denied.

## A. Age Discrimination in Employment.

The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*, forms the basis for Count III of plaintiff's complaint. Defendant's Motion to Dismiss argues that, because the ADEA contains no unequivocal abrogation of sovereign immunity and because Congress did not enact the ADEA pursuant to its power under § 5 of the Fourteenth Amendment, it cannot be enforced against the State.

### 1. *Intent to Abrogate*

The ADEA was enacted in 1967; it allowed for enforcement by suit in any court of competent jurisdiction but it did not apply to the States. In 1974, Congress amended the ADEA by amending the definitions of "employer" to include the States and of "employee" to include State employees. 29 U.S.C. § 630(b) and (c). The means enumerated in the statute for enforcing the substantive provisions of the Act include "a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 626(c)(1). The statute also provides that its provisions may be enforced "in accordance with the powers, remedies, and procedures provided in section[ ] ... 216 ..." of the Fair Labor Standards act. 29 U.S.C. § 626(b). Section 216 of the Fair Labor Standards Act, 29 U.S.C. § 216, provides that "an action to recover ... may be maintained against any employer (including a public agency) in any Federal or State Court of competent jurisdiction." "Employer" includes a "public agency" which is in turn defined as "the government of a State" or "any agency ... of a State." 29 U.S.C. § 203(d), (x).

In a pre-*Seminole Tribe* case, the Seventh Circuit considered whether States' liability under ADEA was barred by Eleventh Amendment immunity. *Davidson v. Board of Governors*, 920 F.2d 441 (7th Cir.1990).[1] The Court noted the States' inclusion in the definition of "employer" and pointed out that "an employer who violates the Act is liable for legal and equitable relief." *Id.* at 443. In concluding that Congress had clearly expressed its intent to subject states to liability under the ADEA, the Court commented:

> Unless Congress had said in so many words that it was abrogating the states' sovereign immunity in age discrimination cases—and that degree of explicitness is not required—it could not have made its desire to override the states' sovereign immunity clearer.

*Id.* [citations omitted]

Other courts, too, had examined the ADEA and the Eleventh Amendment before *Seminole Tribe*. In *Gregory v. Ashcroft*, 501 U.S. 452, 466, 111 S.Ct. 2395, 2403–04, 115 L.Ed.2d 410 (1991), the Supreme Court concluded (in what is probably dicta[2]) that "[t]he ADEA plainly covers all State employees except those excluded by one of the exceptions." *See also, EEOC v. Wyoming*, 460 U.S. 226, 233, 103 S.Ct. 1054, 1058–59, 75 L.Ed.2d 18 (1983) (Congress intended to extend substantive provisions of ADEA to States); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir.1996) (ADEA "leaves no room to dispute" congressional intent to subject states to suit); *Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 701 (1st Cir.1983) (ADEA's express authorization for suit against State employers adequate to demonstrate intent to abrogate); *EEOC v. Newport Mesa Unified School Dist.*, 893 F.Supp. 927 (C.D.Cal.1995); *Reiff v. Philadelphia County Court of Common Pleas*, 827 F.Supp. 319 (E.D.Pa.1993).

---

**1.** Defendant argues that the Eleventh Amendment discussion in *Davidson* is dicta and therefore not dispositive. Given the Seventh Circuit's consistent holding that Eleventh Amendment immunity is jurisdictional, I cannot accept that position; a finding of immunity is tantamount to a finding of lack of subject matter jurisdiction (see *Seminole Tribe*) and cannot be dicta.

**2.** The issue in *Gregory* was whether the ADEA was applicable to State judges. The court found that exceptions in the statute for State employees at the policy making level created an ambiguity as to Congress' intent to create liability on the part of judges.

Defendants argue that these pre–*Seminole Tribe* cases no longer pass muster under the "simple but stringent" test that *Seminole Tribe* describes. Under this test, defendants assert that it is no longer enough to show that States are encompassed within the substantive provisions of a statute or that some manner of enforcement against the States was contemplated; rather a specific intent to subject States to suit in federal court must be found. Arguing that the 1974 amendments to the ADEA did not explicitly address the right to sue States in federal court, defendant concludes that the ADEA simply indicates intent to require State compliance with the substantive provisions of the ADEA. Other enforcement mechanisms are provided in the text of the ADEA, and defendant argues that those mechanisms—including State court litigation and EEOC mediation—may have been thought by Congress sufficient to achieve the goal of ensuring State compliance.

There are only a few post–*Seminole Tribe* cases addressing congressional intent to abrogate States' Eleventh Amendment rights under the ADEA, but in each of these cases the court has concluded that the ADEA's expression of intent to subject States to suit in federal court was sufficiently clear to satisfy the first prong of the *Seminole Tribe* test. *See, Hurd v. Pittsburg State Univ.*, 109 F.3d 1540, 1544 n. 4 (10th Cir.1997) (*Seminole Tribe* does nothing to change prior ruling that Congress intended to abrogate when enacting ADEA); *MacPherson v. Univ. of Montevallo*, 938 F.Supp. 785, 787 (N.D.Ala. 1996) (Congress "clearly and unmistakably intended to abrogate"); *Hodgson v. Univ. of Texas Med. Branch*, 953 F.Supp. 168, 169 (S.D.Tex.1997) (intent to abrogate not disputed by parties); *Teichgraeber v. Memorial Union Corp. of Emporia State Univ.*, 946 F.Supp. 900, 906 (D.Kan.1996) (rejecting argument that *Seminole Tribe* invalidated prior case law finding intent to abrogate).

While none of the post–*Seminole Tribe* cases undertook the type of careful examination of the statutory language seemingly mandated by *Seminole Tribe*, I believe they reached the correct decision. *Seminole Tribe's* finding of sufficiently clear articulation of congressional intent to abrogate was based on specific and repeated references to the State, not only in the definitional and substantive portions of the statute but most importantly in remedial provisions that explicitly authorized enforcement in federal court against States as defendants.

The remedial provisions in the ADEA, and in the portion of the Fair Labor Standards Act incorporated into the ADEA, clearly express Congress' intention to provide a federal court remedy for aggrieved State employees. While defendant is correct that the statute also provides for other remedies which could be utilized against the States without implicating the Eleventh Amendment, that does nothing to negate what I see as a clear textual statement of intent that satisfies the first prong of the *Seminole Tribe* test.

Furthermore, I believe that this court is bound by the Seventh Circuit's holding in *Davidson, supra*, as it is directly on point and not explicitly or implicitly overruled by *Seminole Tribe*. I therefore recommend that the court hold that the ADEA meets the first part of the *Seminole Tribe* test.

### 2. *Valid exercise of power*

In *Gregory*, 501 U.S. at 463, 111 S.Ct. at 2402, and *Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, the Supreme Court clearly concluded that Congress properly exercised its Commerce Clause powers in extending the ADEA to the states. But after *Seminole Tribe* the question is whether Congress properly utilized its Fourteenth Amendment powers in enacting the ADEA and extending it to the States [3]. This question was expressly left open in *Wyoming*, 460 U.S. at 243, 103 S.Ct.

---

**3.** The appropriate question is whether Congress had the authority to adopt the legislation, not whether it correctly recited that authority in the legislation. *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948); *EEOC v. Elrod*, 674 F.2d 601, 604 (7th Cir.1982). Accord, *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 839 (6th Cir.1997); *Ramirez*, 715

F.2d 694. Where Congress has not recited the source of its power or has relied on a power other than the Fourteenth Amendment, courts should not "quickly attribute" to Congress an intent to do so. *Wyoming*, 460 U.S. at 243 n. 18, 103 S.Ct. at 1064 n. 18; *Timmer*, 104 F.3d at 840.

at 1064, but has been answered affirmatively several times by the Seventh Circuit. *Davidson,* 920 F.2d at 443; *Heiar v. Crawford County,* 746 F.2d 1190, 1193–94 (7th Cir.1984); *Elrod,* 674 F.2d at 609.

*Seminole Tribe* did not alter in any way Congress' Fourteenth Amendment powers to abrogate Eleventh Amendment immunity, so the Seventh Circuit cases cited above remain binding on this court. In addition, several post–*Seminole Tribe* cases have found that the ADEA was a valid exercise of Fourteenth Amendment power. *See, Teichgraeber,* 946 F.Supp. at 906; *Hodgson,* 953 F.Supp. at 169. *But see, MacPherson,* 938 F.Supp. at 789 (agreeing with dissent in *Wyoming* and finding the Commerce Clause to be the "bedrock" of the ADEA).

I recommend that the court find that the ADEA was validly enacted under the Fourteenth Amendment. The Seventh Circuit has already ruled on this question, and I believe those cases not only remain binding but also remain persuasive.

### 3. *Conclusion*

As a result of these two conclusions, namely that, in enacting the ADEA, Congress intended to abrogate and did so validly, I recommend that the defendant's motion to dismiss the ADEA claim be denied.

## B. Equal Pay Act

Count II of plaintiff's complaint is premised upon plaintiff's claim that defendant's discriminatory practices deprived her of equal wages and benefits in violation of the Equal Pay Act (EPA), 29 U.S.C. § 206(d). Defendant argues that the Fair Labor Standards Act (FLSA), of which the EPA is a part, was enacted under the Commerce Clause and that Congress expressed therein no intent to abrogate.

### 1. *Intent to Abrogate*

The EPA, provides:

No employer ... shall discriminate ... between employees on the basis of sex by paying wages ... at a rate lower than the rate at which he pays wages to employees of the opposite sex ... for equal work ... 29 U.S.C. § 206(d).

As in the ADEA, the FLSA defines "employer" to include a "public agency" which is in turn defined as "the government of a State" or "any agency ... of a State." 29 U.S.C. § 203(d), (x). The Act provides that an employee may recover for violations of § 206 by maintaining a cause of action "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).

In 1973, the enforcement provision read differently, providing only that a cause of action "may be maintained in any court of competent jurisdiction." The Supreme Court ruled that this language was insufficiently clear to abrogate the States' Eleventh Amendment immunity. *Employees of the Dept. of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). In response to this decision, Congress amended the enforcement provision to read as it does today. *See* Pub.L. No. 93–259 § 6(d)(1). In light of that history, it would seem indisputable that Congress intended to abrogate. *Timmer,* 104 F.3d at 837 (Congress "clearly intended" to abrogate). *Digiore v. Illinois,* 962 F.Supp. 1064, 1070–71 (N.D.Ill.1997) ("abundant references" to "State" in the enforcement provisions suffice to constitute intent to abrogate). I, therefore, recommend that the court find that Congress intended to abrogate.

### 2. *Valid exercise of power*

The difficult question under the EPA is whether Congress exercised its Fourteenth Amendment powers. Congress itself stated that its Commerce Clause powers were being exercised in enacting the FLSA, of which the EPA is a part. 29 U.S.C. § 202(b). *See also, Marshall v. Sheboygan,* 577 F.2d 1 (7th Cir.1978); *Wilson–Jones,* 99 F.3d 203; *Adams v. Kansas,* 934 F.Supp. 371 (D.Kan. 1996); *Raper v. State of Iowa,* 940 F.Supp. 1421 (S.D.Iowa 1996); *Mills v. Maine,* 1996 WL 400510 (D.Me. July 3,1996).

However, while the EPA may be a part of the FLSA, it was enacted at a different time

and for different purposes. As the Sixth Circuit has found, the EPA amendments to the FLSA were aimed at the problem of sex discrimination and were therefore authorized by § 5 of the Fourteenth Amendment. *Timmer*, 104 F.3d at 839.[4] *See also, Usery v. Allegheny County Inst. Dist.*, 544 F.2d 148 (3d Cir.1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *Usery v. Charleston County School Dist.*, 558 F.2d 1169 (4th Cir.1977). Similar reasoning, noted in the discussion above, was utilized by the Seventh Circuit in *Elrod* regarding the ADEA, in which the Court found that the essence of the Fourteenth Amendment was the prohibition of discriminatory treatment. 674 F.2d at 604. Judge Mihm has also adopted this reasoning as it applies to the EPA. See, *Varner v. Illinois State Univ.*, No. 95–1355 (C.D.Ill., Sept. 24, 1996).

I find the reasoning of these courts to be very persuasive and therefore recommend that the court find that Congress had the authority under the Fourteenth Amendment to enact the EPA amendments to the FLSA and therefore validly subjected the States to suit in federal court.

### 3. *Conclusion*

I recommend that the motion to dismiss the EPA claim on the basis of Eleventh Amendment immunity be denied, as I believe that the *Seminole Tribe* two-part test is satisfied.

**Title VII as amended by 42 U.S.C. § 1981a**

Counts I and IV of plaintiff's complaint allege violations of Title VII, 42 U.S.C.A. § 2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. Defendant's motion challenges Congress' intent to abrogate State immunity under the Eleventh Amendment.

### 1. *Intent to Abrogate*

Title VII prohibits discrimination in employment. In 1972, the statute was amended to allow federal courts to award equitable relief that consisted of money damages (spe-

cifically, back pay and attorney fees) against a State government found to have discriminated. These amendments were challenged as barred by the Eleventh Amendment; the Supreme Court upheld them as an appropriate legislation under Fourteenth Amendment power to abrogate Eleventh Amendment immunity. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

In the pending case, defendant challenges 42 U.S.C.A. § 1981a, part of the Civil Rights Act of 1991, asking the court to find that § 1981a does not meet the *Seminole Tribe* test for valid abrogation. According to defendant, *Fitzpatrick* is not dispositive because the damages that can now be awarded under Title VII as amended by § 1981a (compensatory damages) were not under consideration by the *Fitzpatrick* Court. To the contrary, defendant argues that nowhere in the Civil Rights Act of 1991 did Congress articulate an intent to abrogate Eleventh Amendment immunity in the manner required by *Seminole Tribe*.

Section 1981a provides in pertinent part:

(a)(1) In an action brought by a complaining party under ... 42 U.S.C.A. § 2000e–5 ... against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by ... 42 U.S.C.A. § 2000e–5(g) ...

\* \* \* \* \* \*

(b)(1) A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

---

4. Defendant argues that *Timmer* improperly relied on a Seventh Circuit case to support this conclusion and is therefore questionable. The only citation to *Marshall v. Sheboygan*, 577 F.2d 1 (7th Cir.1978) found in *Timmer* relates to legislative history of the EPA. 104 F.3d at 840. More-

over, the *Marshall* court expressly noted the cases that had found the EPA to be a valid exercise of Fourteenth Amendment power. 577 F.2d at 6 n. 19. I see nothing improper in the *Timmer* court's citation to *Marshall*.

Defendant's argument has been considered by another court and rejected. In *Blankenship v. Warren County,* 931 F.Supp. 447 (W.D.Va.1996), the court held that Title VII and § 1981a were statutes *in pari materia* and should be construed together. *Id.* at 450. The reference to "respondent" in § 1981a can only be logically defined by reference to Title VII, and respondent is therein defined as an "employer" which includes States and arms of States. *Id. See also, Sattar v. Unocal Corp.,* 829 F.Supp. 331, 333 n. 3 (N.D.Cal.1993) (in reaching a decision on another issue, holding that "respondent" can only be interpreted by reference to Title VII).

I find this statutory construction eminently reasonable and I find the logic of defendant to be highly questionable. The language of § 1981a is a very clear expression of Congress' desire to subject the States to liability for compensatory damages for intentional violations of Title VII. There is no other way to read this section, at least not without making other parts of § 1981a meaningless. Moreover, the explicit text of § 1981a establishes a direct tie to Title VII, a tie which is so close that § 1981a is virtually meaningless without Title VII. I conclude that the expression of intent to abrogate found sufficient by the *Fitzpatrick* Court is equally sufficient here.

I therefore recommend that the court find that Congress did clearly intend the Civil Rights Act of 1991 to abrogate State immunity under the Eleventh Amendment.

### 2. *Conclusion*

Defendants do not argue that the Civil Rights Act of 1991 was not enacted pursuant to Congress authority under § 5 of the Fourteenth Amendment. I therefore recommend that the court find that § 1981a meets both parts of the *Seminole Tribe* test and therefore constitutes a valid abrogation of sovereign immunity.

### III. FAILURE TO STATE CLAIMS

In this portion of the motion to dismiss, defendant argues that the complaint consists of conclusory allegations that are not sufficiently supported by factual allegations. My reading of the complaint reveals that it contains more than enough to apprise the defendant of the nature of the claims and the legal theories behind the claims and to allow the defendant to answer. This is all that is required under Fed.R.Civ.P. 8 and federal notice pleading. I, therefore, recommend that this portion of the motion be denied.

### IV. MOTION TO STRIKE IMPROPER PRAYER FOR DAMAGES

Defendant properly argues that punitive damages are not recoverable from a governmental entity as a matter of law, and plaintiff does not dispute this point. I therefore recommend that the motion be granted as to all prayers for punitive damages and that those prayers be stricken.

Defendant makes several other arguments about whether certain damages could appropriately be awarded in this particular case, damages such as reinstatement. I believe that these arguments are highly fact intensive and are inappropriate to consider at this stage of the litigation; rather, discovery should be completed and these issues reconsidered, if necessary, on dispositive motions.

### V. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendant argues that plaintiff has included in her complaint several claims that were not included in her EEOC charge and that "allegations that are not in the Charge of Discrimination may not be brought in the Complaint." (Doc. # 3, p. 14). Plaintiff responds that the complaint contains allegations "which evidence the continuing nature of the discrimination which Plaintiff has been subjected to [sic]. Any further particulars brought forward in the complaint merely re-emphasize the subject matter of the EEOC claim." (Doc. # 7 p. 8).

Neither party has provided any legal authority for these arguments. It is entirely improper under local rule CDIL 7.1(B) for the parties to submit an argument without supporting authority. Because the burden of persuasion is on the moving party, I recommend that the motion be denied to the extent it is based on a failure to exhaust remedies.

## VI. STATUTE OF LIMITATIONS

Defendant argues that the complaint includes or attempts to bring in matters from more than 300 days prior to the filing of plaintiff's original charge with the EEOC, thus barring the Title VII and ADEA claims to the extent they are based on events before that date. Defendant also states that the two year limitations period under the EPA bars some of those claims, because each separate paycheck is a separate violation and some of plaintiff's claims arose more than two years before the filing of this complaint.

Plaintiff does not dispute that her "damages are limited to events which occurred within 300 days prior to filing the original charge of discrimination," a statement which responds not at all to defendant's arguments about the claims (as opposed to the damages). Plaintiff further asserts that, while the limitations period under the EPA is two years, it is two years from the date of the EEOC charge because she included the EPA claim in that charge.

Once again, neither party submitted legal authority for these positions in disregard for local rule CDIL 7.1(B), so once again I recommend that the motion on this issue be denied.

## VII. CONCLUSION

The motion should be allowed in part (punitive damages should be stricken from all prayers for relief) and denied in all other regards. The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within ten (10) working days after service of this Report and Recommendation. Fed. R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986).

Enter this 22nd day of May, 1997.