Roderick MacPHERSON, et al., Plaintiff,

v.

UNIVERSITY OF MONTEVALLO,
Defendant.

Civil Action No. 94–AR–2962–S.

United States District Court,
N.D. Alabama,
Southern Division.

Sept. 9, 1996.

---

David R. Arendall, Birmingham, AL, for plaintiffs.

William F. Gardner, Cabaniss Johnston Gardner Dumas & O'Neal, Birmingham, AL, Carl E. Johnson, Jr., Bishop Colvin Johnson & Kent, Birmingham, AL, for defendant.

Douglas A. Hedin, Minneapolis, MN, for National Employment Lawyers Association, amicus.

## MEMORANDUM OPINION

ACKER, District Judge.

Now before the court is a motion to dismiss filed in the above-styled action by defendant, University of Montevallo, on July 25, 1996. The motion was filed pursuant to Rule 12(b)(1), Fed.R.Civ.P.[1] Plaintiffs, Roderick MacPherson and Marvin Narz, allege that defendant has violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"), as well as, plaintiffs' right to freedom of speech guaranteed by the First Amendment. Plaintiffs consent to the dismissal of their First Amendment claims. Accordingly, the only issue in contention for this motion to dismiss is whether the University of Montevallo, as an instrumentality of the State of Alabama,[2] is entitled to Eleventh Amendment immunity. Because defendant has demonstrated that it is entitled to Eleventh Amendment immunity, this court lacks subject matter jurisdiction over the ADEA claim, and defendant's motion to dismiss is due to be granted.

1. *See* Plaintiffs' brief at 2.

2. *See* Ala.Code 1975, §§ 16–54–1 through 16–54–18.

## FACTS

Plaintiffs, MacPherson and Narz, allege that they are employed by defendant as associate professors and have been subjected to discrimination based upon their age. MacPherson and Narz aver that they are 49 and 50 years old respectively. Plaintiffs allege that defendant has engaged in a pattern and practice of discrimination against them and a continuing practice of treating younger faculty members more favorably than older faculty members with regard to salaries and promotions. Furthermore, plaintiffs aver that defendant has used an age-based evaluation system to discriminate against plaintiffs with regard to promotions, assignments, benefits and salaries.

Plaintiffs further allege that defendant has retaliated against them based upon previous EEOC charges and a previous lawsuit against same defendant for age discrimination, CV 88–B–1341–S. Plaintiffs allege that the previous lawsuit was settled and is subject to a confidentiality agreement. Plaintiffs claim that defendant has engaged in a continuing practice of discrimination and retaliation against them.

## ANALYSIS

In Count I, MacPherson and Narz allege that the University of Montevallo discriminated against them in violation of the antidiscrimination provisions of the ADEA. MacPherson and Narz are clearly within the class of persons protected by the ADEA. *See* 29 U.S.C. § 631(a) (1996). Because the relevant section of the ADEA makes it illegal "for an employer to ... discriminate against any individual ... because of such individual's age," 29 U.S.C. § 623(a)(1), MacPherson and Narz have the statutory foundation for an ADEA claim.[3] As a result, the court must determine whether the Eleventh Amendment immunizes defendant from plaintiffs' ADEA claims.[4]

3. The term "employer" includes "a State ... or any agency or instrumentality of a State...." 29 U.S.C. § 630(b)(2) (1996).

4. The scope of the Eleventh Amendment to the United States Constitution is textually limited:

■ When determining if the Eleventh Amendment immunizes a particular governmental entity from suit in federal court, the court must proceed through a multi-tiered analysis. First, the court must determine if the governmental entity is the alter-ego of or an arm of the state and therefore entitled to Eleventh Amendment immunity. *See, e.g., Harden v. Adams,* 760 F.2d 1158 (11th Cir.), *cert. denied sub nom. Grimmer v. Harden,* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). Even if the court determines that the entity falls within the purview of the Eleventh Amendment, the states' immunity is not absolute. Next, the court must apply the second and third steps to determine if the state entity has waived its Eleventh Amendment immunity and/or whether Congress has lawfully abrogated the states' collective Eleventh Amendment immunity. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). If Eleventh Amendment immunity is not waived or expressly abrogated, then the Eleventh Amendment serves as a jurisdictional bar to suit. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ In the instant action, neither side disputes that the University of Montevallo is an instrumentality of the state. In fact, the issue of whether Universities of the state of Alabama are instrumentalities of the state has already been litigated and decided. *See Harden,* 760 F.2d at 1163–1164 (stating that the Alabama Supreme Court has held that Alabama universities are instrumentalities or agencies of the state). Accordingly, the University of Montevallo is entitled to whatever protection the Eleventh Amendment provides.

■ Next, the court must turn to step two of the analysis and determine if the University of Montevallo waived its immunity and consented to the present action. The court determines that the University has not waived its Eleventh Amendment immunity in the instant action. Section 14 of the Alabama Constitution states, "the State of Alabama shall never be made a defendant in any court of law or equity." Ala.Const. of 1901, § 14 (1975). Accordingly, Alabama has expressly reserved its sovereign immunity.

■ Now the court must proceed through the third step of the multi-tiered analysis, namely, whether or not Congress has expressly abrogated the University's immunity. In order to determine if Congress has successfully abrogated the States' Eleventh Amendment immunity, the court must conduct a two-part inquiry. First, the court must determine that the "evidence of congressional intent [to abrogate is] both unequivocal and textual." *Dellmuth v. Muth,* 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989). Second, the court must determine whether "Congress possessed the power under the Constitution to abrogate the states' Eleventh Amendment sovereign immunity." *Seminole Tribe of Florida v. State of Florida,* 11 F.3d 1016, 1024 (11th Cir. 1994), *aff'd,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

In addressing Congress' intent to abrogate the states' sovereign immunity through the ADEA, the court concludes that Congress clearly and unmistakably intended to abrogate the States' Eleventh Amendment immunity. Congress expressed its intention by including in the ADEA's definition of "employer" a "State and any ... agency or instrumentality of a State ..." 29 U.S.C. § 626(b) (1996). Furthermore, numerous district and circuit courts have come to the same conclusion on the issue of Congress' intent. *See, e.g., Hurd v. Pittsburg State Univ.,* 29 F.3d 564, 564–65 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 321, 130 L.Ed.2d 282 (1994); *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 700–01 (1st Cir. 1983).

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. However, the facial reading of the Amendment has been rejected by the Supreme Court. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). As a result, the States' sovereign immunity in Federal Court is vast.

The next hurdle is the one plaintiffs fail to clear: Does Congress have the power under the United States Constitution to abrogate the states' Eleventh Amendment immunity? The Supreme Court has recently reiterated that Congress cannot invade Eleventh Amendment immunity except "pursuant to a valid exercise of power" conferred by the Constitution. *Seminole Tribe*, ___ U.S. at ___, 116 S.Ct. at 1123. In determining the sources of power, the Supreme Court had previously found that Congress possessed the power to abrogate the states' sovereign immunity when legislating pursuant to § 5 of the Fourteenth Amendment and the Commerce Clause. *See id.; see also Fitzpatrick*, 427 U.S. 445, 96 S.Ct. 2666; *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (holding that Congress could abrogate the Eleventh Amendment pursuant to the Commerce Clause). However, the Supreme Court in *Seminole Tribe* overruled its plurality decision in *Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, where the Supreme Court held that Congress could abrogate the Eleventh Amendment pursuant to the Commerce Clause, by stating that "[w]e feel bound to conclude that *Union Gas* was wrongly decided and that it should be, and now is, overruled." *Seminole Tribe*, ___ U.S. at ___, 116 S.Ct. at 1128.

As a result of the Supreme Court decision in *Seminole Tribe*, the foundation for ADEA cases against states and state entities entitled to Eleventh Amendment immunity has been removed. In *Seminole Tribe*, the Court, among other things, held that Congress cannot abrogate the Eleventh Amendment immunity enjoyed by the State when enacting legislation pursuant to the Commerce Clause. *Id.* at ___ ___, 116 S.Ct. at 1131–32. Thus, if the ADEA was enacted by Congress only pursuant to that body's legislative power granted under the Commerce Clause, the University of Montevallo enjoys absolute immunity to MacPherson's and Narz's ADEA claim.

■ As *Seminole Tribe* makes clear, Congress only has the power to abrogate Eleventh Amendment immunity when enacting legislation pursuant to § 5 of the Fourteenth Amendment. Consequently, the determinative inquiry before this court is whether the ADEA was a valid exercise of that Congressional power. More specifically, because the ADEA as originally enacted in 1967 did not reach state employees, the focus of this court's attention is whether the 1974 Amendments to the ADEA, which extended coverage of the ADEA to state governments in 29 U.S.C. § 630(b)(2), were passed pursuant to § 5 of the Fourteenth Amendment.

Prior to *Seminole Tribe*, the Supreme Court had held only that the ADEA was a valid exercise of Congress' powers under the Commerce Clause. *Equal Employment Opportunity Commission v. Wyoming*, 460 U.S. 226, 235–44, 103 S.Ct. 1054, 1059–1064, 75 L.Ed.2d 18 (1983). In a five-—four majority opinion authored by Justice Brennan, the Court expressly left open the question of whether that same conclusion could be reached under § 5 of the Fourteenth Amendment. *Id.* at 243, 103 S.Ct. at 1064.[5] Justice Stevens, who cast the deciding vote, concurred with the majority but added that his vote was limited to "construing the scope and power granted to Congress by the Commerce Clause of the Constitution." *Id.* at 244, 103 S.Ct. at 1064 (Stevens, J., concurring).

*Wyoming*, however, presents one of those rare instances where a dissenting opinion provides the more useful statement of the law. Given the majority's reluctance to take up the issue, the dissent joined by the four remaining members of the Court takes on added significance. In that opinion, Chief Justice Burger, joined by Justices Powell, Rehnquist and O'Connor, persuasively argued that the ADEA was not and could not have been passed pursuant to the Fourteenth Amendment. *Id.* at 259–63, 103 S.Ct. at 1072–75.

**5.** Plaintiffs' argument that "the Court has already declared that Congress acted properly in extending ADEA to the states" is mistaken. The Supreme Court has ruled upon the question of whether the ADEA was properly extended to the states via the Commerce Clause. The Supreme Court expressly reserved a ruling on whether the ADEA was premised upon § 5 of the Fourteenth Amendment. This court holds that it was not.

In addition, this court finds defendant's reasoning that the ADEA was passed along with the Fair Labor Standards Act pursuant to the same vehicle, the Commerce Clause, more plausible. If Congress intended to amend the ADEA based upon § 5 of the Fourteenth Amendment it could have done so, as it did with respect to the 1972 amendments to Title VII.[6] *See* H.R.Rep. No. 92–238, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2154. In fact, if Congress had any desire to base the ADEA on anything other than the Commerce Clause, it had and for that matter still has the ability to amend the ADEA separately and distinctly from the Fair Labor Standards Act. Unless and until Congress chooses § 5 of the Fourteenth Amendment as its vehicle for amending the ADEA, the ADEA's bedrock is the same as it has been since its inception in 1967, the Commerce Clause. Probably Congress chose not to invoke the Fourteenth Amendment as a basis for the ADEA because the Fourteenth Amendment is not a logical basis for a prohibition against age discrimination by a state.

After careful consideration of the issue and absent any expression to the contrary from the Eleventh Circuit, this court agrees with the dissenters in *Wyoming* and concludes that the ADEA was enacted pursuant to the Commerce Clause and not the Fourteenth Amendment. *See Black v. Goodman*, 736 F.Supp. 1042 (D.Mont.1990); *Farkas v. New York State Dept. of Health*, 554 F.Supp. 24, 27–28 (N.D.N.Y.1982), *aff'd*, 767 F.2d 907 (2d Cir.), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985). *But see Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir. 1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Griswold v. Alabama Dep't of Indus. Relations*, 903 F.Supp. 1492 (M.D.Ala.1995). Thus, Congress did not abrogate the University of Montevallo's entitlement to Eleventh Amendment immunity in enacting the ADEA. Because the Eleventh Amendment precludes MacPherson and Narz's action against the

University of Montevallo, defendant's motion to dismiss will be granted as the court lacks subject matter jurisdiction. A separate and appropriate order will be so entered.

---

6. This court takes note of the well reasoned analysis of the First Circuit Court of Appeals in *Ramirez v. Puerto Rico Fire Service*, 715 F.2d 694, 700 (1st Cir.1983). However, this court fundamentally disagrees with the notion that it slipped the collective minds of Congress to mention the Fourteenth Amendment in the 1974 amendments to the ADEA, but remember it in the 1972 amendments to Title VII.