Cecil C. SIMPSON, Plaintiff,

v.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Defendant.**

No. A–95–CA–785–SS.

United States District Court,
W.D. Texas,
Austin Division.

July 24, 1997.

Terry Davis, Austin, TX, for Plaintiff.

Michael Winert–Hernandez, Austin, TX, for Defendant.

Ernest C. Garcia, Asst. U.S. Atty., Austin, TX, Sharon A. Seeley, U.S. Dept. of Justice, Civil Rights Div., Employment Litigation Section, Washington, DC, for Intervenor.

## ORDER

SPARKS, District Judge.

The plaintiff brings this cause of action against the Texas Department of Criminal Justice ("TDCJ") alleging violations of the Age Discrimination in Employment· Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Texas Labor Code Ann. §§ 21.001–.306. The plaintiff Cecil Simpson is 70 years old and was employed by the TDCJ for over 25 years. Simpson alleges the TDCJ failed to promote him to the Director of the Pardons and Paroles Division in July 1994 because of his age and sex. Simpson also claims that the TDCJ failed to promote him to Assistant Director of Operations because of his age and in retaliation for filing a charge of age and sex discrimination with the Texas Human Rights Commission and the Equal Employment Opportunity Commission. The TDCJ filed two partial motions to dismiss the plaintiff's ADEA and Texas Labor Code claims, arguing that those claims are barred by the Eleventh Amend-

ment to the United States Constitution, The Court will address each motion seriatim.

## I. ADEA Claim

On October 25, 1996, the TDCJ filed a motion to dismiss the plaintiff's ADEA claim in light of the Supreme Court's recent pronouncement regarding Eleventh Amendment jurisprudence in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). On October 25, 1996, the Court certified the defendant's constitutional challenge of Congress' intended abrogation of the States' Eleventh Amendment immunity to the Attorney General of the United States. Pursuant to 28 U.S.C. § 2403, the United States intervened to defend the constitutionality of the ADEA as it applies to the States by filing a brief on November 25, 1996. Likewise, the plaintiff filed a response to the motion to dismiss on November 4, 1996. The Court held a hearing on the motion to dismiss on January 10, 1997 at which the plaintiff, the defendant, and the United States appeared by representation of counsel. Having considered the oral arguments and written briefs of counsel and the applicable law, the Court concludes that Congress lawfully abrogated the defendant's Eleventh Amendment immunity under the ADEA.

██ The Eleventh Amendment bars the exercise of subject matter jurisdiction by federal courts over suits brought by citizens against a State.[1] In *Seminole Tribe*, the Supreme Court held that Congress lacked the power to abrogate the States' Eleventh Amendment immunity by enacting the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* pursuant to the Indian Commerce Clause. *Id.* at —— – ——, 116 S.Ct. at 1131–32. In so holding, the Supreme Court restated its two-part test for determining

whether Congress has validly abrogated a State's sovereign immunity. A court must first determine whether Congress has "'unequivocally expresse[d] its intent to abrogate'" a State's sovereign immunity. *Id.* at ——, 116 S.Ct. at 1123 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)). If that issue is answered affirmatively, the court must then consider whether Congress acted "pursuant to a valid exercise of power." *Id.*

██ The TDCJ concedes that the first requirement is met here. The first prong of the *Seminole Tribe* test requires Congress to make its intent to abrogate a State's Eleventh Amendment immunity "'unmistakably clear in the language of the statute.'" *See id.* (quoting *Dellmuth v. Muth*, 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2399–2400, 105 L.Ed.2d 181 (1989)). The ADEA includes within its definition of an "employer" (that is, the class of potential defendants in an ADEA lawsuit) a "State or political subdivision of a State and any agency or instrumentality of a State." *See* 29 U.S.C. § 630(b)(2). The Supreme Court observed that the explicit reference to the State as a defendant indicates that Congress intended to abrogate the States' sovereign immunity from suit. *See Gregory v. Ashcroft*, 501 U.S. 452, 467, 111 S.Ct. 2395, 2404, 115 L.Ed.2d 410 (1991) ("The ADEA plainly coves all state employees except those excluded by one of the exceptions."); *Equal Employment Opportunity Commission v. Wyoming*, 460 U.S. 226, 243, 103 S.Ct. 1054, 1064, 75 L.Ed.2d 18 (1983) ("EEOC") (observing that Congress extended the substantive provisions of the ADEA to state governments with the 1974 amendments); *see also Davidson v. Bd. of Gov. of State Colleges & Univ.*, 920 F.2d 441, 443 (7th Cir.1990) ("Unless Congress had

---

1. The Eleventh Amendment provides:

   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Subjects of any Foreign State.

   Despite the textual limitation to diversity jurisdiction, it is well-established that the Eleventh Amendment precludes citizens from bringing suits in federal court against their own States. *Hans v. Louisiana*, 134 U.S. 1, 10–11, 10 S.Ct.

504, 505, 33 L.Ed. 842 (1890). In addition, Eleventh Amendment immunity extends not only to States, but also to state agencies and individuals sued in their official capacities. *United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 561(5th Cir.1982) (state agencies); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (individuals sued in their official capacities).

said in so many words that it was abrogating the states' sovereign immunity in age discrimination cases—and that degree of explicitness is not required . . .—it could not have made its desire to override the states' sovereign immunity clearer."). *But see Humenansky v. Bd. of Regents of the Univ. of Minnesota,* 958 F.Supp. 439, 442 (D.Minn. 1997) (acknowledging the "considerable force" of *Davidson* but holding that "[t]he ADEA lacks the 'unequivocal declaration' necessary" to abrogate the States' Eleventh Amendment immunity). Thus, the only remaining issue is whether Congress enacted the ADEA pursuant to a valid exercise of power.

Prior to *Seminole Tribe,* the Supreme Court had recognized authority to abrogate a State's Eleventh Amendment immunity under only two provisions of the Constitution: section 5 of the Fourteenth Amendment and the Interstate Commerce Clause, U.S. Const. art. I, § 8, cl. 3. *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1125. The Supreme Court in *Seminole Tribe* upheld the well-settled principle that Congress may abrogate a State's sovereign immunity under section 5 of the Fourteenth Amendment.[2] *See id.* at ——, 116 S.Ct. at 1125; *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455–56, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). The Court reiterated the original basis for this holding: section 5 grants Congress the power to enforce section 1 of the Fourteenth Amendment, which contains specific prohibitions directed at the States.[3] *See Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1125. As a result, the Fourteenth Amendment "fundamentally altered the balance of state and federal power struck by the Constitution" by "expanding federal power at the expense of state autonomy." *Id.* Hence, the Supreme Court concluded that Congress' power to abrogate a State's Eleventh Amendment immunity under section 5 does not implicate any federalism concerns.

The Supreme Court then reexamined its holding in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 23, 109 S.Ct. 2273, 2286, 105 L.Ed.2d 1 (1989), in which a plurality of the Supreme Court found that Congress had authority under the Interstate Commerce Clause to abrogate a State's Eleventh Amendment immunity. In *Union Gas,* the Supreme Court analogized the Interstate Commerce Clause to the Fourteenth Amendment and found that both provisions of the Constitution function to expand federal power at the expense of the States. The *Union Gas* Court concluded that Congress' "plenary" power to regulate interstate commerce "would be incomplete without the [corresponding] authority to render States liable in damages." *Id.* at 19, 109 S.Ct. at 2284. The Supreme Court in *Seminole Tribe* flatly rejected this conclusion and, in so doing, explicitly overruled *Union Gas,* which it characterized as a "solitary departure from established law." *See id.* at ——, 116 S.Ct. at 1128.

First, the Supreme Court explained that it is "well-established" that the Eleventh Amendment stands for "the constitutional principle that state sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Id.* at ——, 116 S.Ct. at 1127. The Supreme Court then reasoned that Article I cannot be used to expand the scope of Article III judicial power since Article HI sets forth the " '*exclusive* catalog of permissible federal court jurisdiction.' " *Id.* at —— – ——, 116 S.Ct. at 1127–28 (quoting *Union Gas,* 491 U.S. at 39, 109 S.Ct. at 2301 (Scalia, J., dissenting)) (emphasis in original). To hold otherwise would allow Congress to "circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at ——, 116 S.Ct. at 1132. Therefore, despite *Seminole Tribe's* seemingly limited holding, the Supreme Court makes it clear that authority to abrogate a State's sovereign immunity must come from Congress' power under section 5 of the Fourteenth Amendment and not from *any* of Congress' Article I powers.[4]

---

**2.** Section 5, the "enabling clause" of the Fourteenth Amendment, provides that "[t]he Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."

**3.** The relevant provision in this case, of course, is the Equal Protection Clause.

**4.** States may waive their Eleventh Amendment immunity and consent to be sued in federal court. *See Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1128. The Court is intrigued by arguments that the State of Texas and/or the TDCJ have effectively waived sovereign immunity by

The defendant contends that it retains its sovereign immunity from suit under the ADEA because the 1974 amendments to the ADEA, which extended coverage of the ADEA to state employees, were enacted only pursuant to Congress' power under the Interstate Commerce Clause. There is no disputing that the ADEA was initially enacted pursuant to the Commerce Clause—it had to be in order to reach private action—and that the extension of the ADEA to cover state and local governments has been held by the Supreme Court to be a valid exercise of Congress' powers under the Commerce Clause. See EEOC, 460 U.S. at 243, 103 S.Ct. at 1064. The defendant errs, however, in reading EEOC to stand for the proposition that the ADEA was enacted only pursuant to the Commerce Clause. Indeed, the Supreme Court specifically declined to consider whether the 1974 amendments might have been upheld as a constitutional exercise of Congress' section 5 powers. See id. Furthermore, constitutional grants of authority are not, as the defendant seems to imply, mutually exclusive-nothing prevents Congress from enacting legislation pursuant to more than one constitutional power.[5]

After reviewing the legislative history of the ADEA, it is apparent that Congress did not rely solely on the Commerce Clause when it amended the ADEA. Congress' general anti-discrimination aim, apart from any derivative effects such discrimination might have on interstate commerce, is clear from the Congressional statement of purposes: "It is ... the purpose of this chapter ... to prohibit arbitrary age discrimination in employment." See 29 U.S.C. § 621; see also Ramirez v. Puerto Rico Fire Service, 715 F.2d 694, 699 (1st Cir.1983) (stating that the legislative history ... "makes it plain that Congress' purpose in extending ADEA coverage was to shield public employees from the invidious effects of age-based discrimination"). Therefore, in the absence of the Commerce Clause, the 1974 amendments to the ADEA are constitutionally valid in light of Congress' section 5 powers to enforce the substantive guarantees of the Fourteenth Amendment, and, more specifically, the Equal Protection Clause.

Even assuming that legislative history of Congressional intent on this issue is inconclusive or lacking, which it is not, a court must simply "be able to discern some legislative purpose or factual predicate that supports the exercise" of Congress' section 5 powers in order to uphold such legislation.[6] See

---

accepting federal funds, a condition of which is the State's representation that Texas would comply with all federal anti-discrimination statutes. In light of this opinion, however, the waiver and consent issue is moot and will not be addressed.

5. Title VII, another federal anti-discrimination statute protecting state employees, is the perfect example. See Fitzpatrick v. Bitzer, 427 U.S. 445, 457–58, 96 S.Ct. 2666, 2672, 49 L.Ed.2d 614 (1976) (Brennan, J. concurring in judgment) (stating that Title VII, which protects employees from discrimination based on race, color, religion, sex, and national origin, was enacted pursuant to both the Commerce Clause and section 5 of the Fourteenth Amendment).

6. The defendant argues that EEOC was implicitly overruled by Gregory v. Ashcroft, 501 U.S. 452, 469, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991), which adopts the standard set out in Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In Pennhurst, the Supreme Court stated that "we should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment" since such legislation involuntarily encroaches upon "traditional state authority." Id. at 16, 101 S.Ct. at

1539. The defendant argues that Congress must therefore specifically state in the ADEA that it acted pursuant to section 5. The defendant misinterprets Gregory and confuses the two prongs of the Seminole Tribe test.

In Gregory, the Supreme Court considered whether state judges who were subject to mandatory retirement at age 70 qualified as "employees" under the ADEA. Using the Pennhurst standard, the Supreme Court held that, before the ADEA could be construed to apply to state judges, a plain statement to that effect was required from Congress. See id. at 467–70, 111 S.Ct. at 2404–06. On those facts, the Supreme Court refused to "attribute to Congress an unstated intent to intrude on traditional state authority in the exercise of its § 5 powers." Id. at 470, 111 S.Ct. at 2406. The Supreme Court once again refused to consider whether the ADEA was enacted pursuant to the Fourteenth Amendment and instead held that, even if the ADEA were passed pursuant to Congress' section 5 powers, the ADEA was too ambiguous to conclude that it protected state judges. See id. at 469–70, 111 S.Ct. at 2405–06.

As the Supreme Court carefully explained in Gregory, "Pennhurst established a rule of statuto-

*EEOC,* 460 U.S. at 243 n. 18, 103 S.Ct. at 1064 n. 18. In other words, no formal incantation of the words "section 5" or "Fourteenth Amendment" is required by Congress before a court may uphold the validity of a statute on those grounds. Indeed, under *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 1724, 16 L.Ed.2d 828 (1966), legislation enacted pursuant to section 5 is constitutional as long as it is (1) "regarded as an enactment to enforce" the Fourteenth Amendment, (2) "plainly adapted to that end," and (3) consistent with "the letter and spirit of the Constitution."

■ The defendant argues that the ADEA fails the *Katzenbach* inquiry. The defendant starts with the axiomatic premise that the ADEA must protect a right guaranteed by the Fourteenth Amendment before a court can infer that Congress intended to enforce such a right through section 5. The defendant then asserts the related argument that Congress may not pass legislation prohibiting a broader range of activity than that specifically prohibited by the Fourteenth Amendment. The Equal Protection Clause prohibits the States from discriminating on the basis of suspect or quasi-suspect classifications or in a manner that infringes upon a fundamental constitutional right. All other forms of discrimination, including age-based classifications, pass muster under the Fourteenth Amendment as long as the state action is rationally related to a legitimate state interest. *See, e.g., Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) (applying the rational basis test to age-based classifications and finding that an involuntary retirement statute for state police officers did not violate the Equal Protection Clause). The defendant argues that, because courts examine the constitutionality of age-based classifications under a rational basis standard of review, Congress has no authority under section 5 to prohibit age discrimination through the ADEA.

The defendant is just plain wrong. First, it simply does not follow as a matter of logic or common sense that because age-based classifications are reviewed on a rational basis standard, the Equal Protection Clause does not protect against age discrimination. Indeed, the fact that age-based classifications are subject to judicial review in the first place, even if the standard is weak, negates the defendant's argument. Second, this tired argument has been considered and rejected numerous times by the Supreme Court, most recently in *City of Boerne v. P.F. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). In *Boerne,* the Supreme Court reaffirmed that Congress' authority to legislate pursuant to section 5, while not without its limits, is quite broad in scope:

> Legislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not unconstitutional and intrudes into 'legislative spheres of autonomy previously reserved to the States.'

*Id.* at ——, 117 S.Ct. at 2163 (quoting *Fitzpatrick,* 427 U.S. at 455, 96 S.Ct. at 2671); *see also Ramirez v. Puerto Rico Fire Service,* 715 F.2d 694, 698 (1st Cir.1983) (explaining that it is "irrelevant whether the activities which Congress seeks to forbid by legislation are themselves unconstitutional either under the Equal Protection Clause or under other provisions of the Fourteenth Amendment"). The Supreme Court indicated that Congress must be given "wide latitude" in distinguishing between legislation

ry construction to be applied where statutory intent is ambiguous." *Id.* at 470, 111 S.Ct. at 2406. *Gregory* therefore confirms the use of the *Pennhurst* standard as first declared in *EEOC: Pennhurst* is applicable when a court considers the first prong of the *Seminole Tribe* test, that is, whether Congress unmistakably stated its intent to abrogate a State's Eleventh Amendment immunity. Congress need not specifically state, however, under what authority it is acting; the "constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *See EEOC,* 460 U.S. at 243 n. 18, 103 S.Ct. at 1064 n. 18. It should also be noted that the Supreme Court specifically responded to a lower court's misconstruction of *Pennhurst*—a misconstruction identical to the one the defendant is making here-when it formulated the *EEOC* standard. In any event, even if the Court were to apply the more stringent *Gregory* standard, this Court would still conclude that Congress enacted the 1974 amendments pursuant to its section 5 powers.

which appropriately remedies or prevents unconstitutional action and that which substantively changes governing constitutional law as interpreted by the Supreme Court. *See Boerne,* —— U.S. at —— – ——, 117 S.Ct. at 2164–65. The key to this distinction is the existence of some proportionality between "the injury to be prevented or remedied and the means adopted to that end." *See id.*

In general, the ADEA prohibits state employers from discriminating against individuals on the basis of age with respect to any terms and conditions of employment, unless age is a bona fide occupational qualification. *See generally* 29 U.S.C. §§ 623(a) & (f), 630(b)(2). Employers who arbitrarily discriminate on the basis of age are subject to civil penalties for such action. *See* 29 U.S.C. § 626(c)(1). Congress could have rationally concluded that the prospect of compensatory damage awards for transgressions of the statute would likely deter state violations of the Fourteenth Amendment. This type of enforcement mechanism—which, under Title VII, is also used to combat discrimination in employment based on race, color, religion, sex, and national origin—is commensurate with the goals of preventing and remedying arbitrary and irrational age discrimination and does not unconstitutionally encroach on state prerogatives.[7]

While the Fifth Circuit has not ruled on this issue either before or after *Seminole Tribe,* the Tenth Circuit recently examined the issue at length and determined that Congress validly abrogated the States' Eleventh Amendment immunity under the 1974 amendments to the ADEA. *See Hurd v. Pittsburg State University,* 109 F.3d 1540, 1546 (10th Cir.1997). Furthermore, the Circuit Courts that considered the issue prior to *Seminole Tribe* universally concluded that the 1974 amendments to the ADEA were enacted pursuant to section 5 of the Fourteenth Amendment. *See Davidson,* 920 F.2d at 443; *Equal Employment Opportunity Comm'n v. Elrod,* 674 F.2d 601, 603 (7th Cir.1982); *Ramirez,* 715 F.2d at 699–700; *Arritt v. Grisell,* 567 F.2d 1267, 1270–71 (4th Cir.1977). *But see MacPherson v. University of Montevallo,* 938 F.Supp. 785, 789 (N.D.Ala.1996) (holding that the 1974 amendments were enacted pursuant to the Commerce Clause only and barring a claim against state university on Eleventh Amendment immunity grounds). In light of these holdings, as well as the Court's independent analysis of the issue, the Court concludes that Congress unambiguously intended to abrogate and, pursuant to section 5 of the Fourteenth Amendment, lawfully abrogated the defendant's Eleventh Amendment immunity under the ADEA.

## II. TEXAS LABOR CODE CLAIM

On November 22, 1996, the TDCJ filed a partial motion to dismiss the plaintiff's Texas Labor Code claim. State agencies are cloaked with Eleventh Amendment immunity, and the State of Texas has not waived its immunity or consented to suit in federal court. *See Sherwinski v. Peterson,* 98 F.3d 849, 851 (5th Cir.1996). Therefore, this Court is clearly without subject matter jurisdiction over the plaintiff's Texas Labor Code claim.

For the foregoing reasons, the Court enters the following orders:

IT IS ORDERED that the defendant's Motion to Dismiss the plaintiff's claim under the Age Discrimination in Employment Act [# 32] is DENIED; and

IT IS FURTHER ORDERED that the defendant's Motion to Dismiss the plaintiff's claim under the Texas Labor Code [# 43] is GRANTED.

---

7. That Congress could effectively deter and remedy age discrimination though a more narrowly tailored remedial scheme, even if true, is largely immaterial to our inquiry. The Supreme Court in *Boerne* never instructed or even suggested that courts review section 5 legislation under such a high level of scrutiny. Instead, courts must simply examine the remedial scheme *chosen by Congress* to determine whether the means are proportional to the ends to be achieved.