Peddrick M. YOUNG, Sr., Plaintiff,

v.

**PENNSYLVANIA HOUSE OF REPRE-SENTATIVES, REPUBLICAN CAUCUS, Defendant.**

**Civil Action No. 1:CV–97–1873.**

United States District Court,
M.D. Pennsylvania.

Feb. 18, 1998.

Steven P. Miner, Metzger, Wickersham, Knauss & Erb, Harrisburg, PA, for Plaintiff.

John P. Krill, Jr., David R. Fine, Kirkpatrick & Lockhart, Harrisburg, PA, for Defendant.

## MEMORANDUM

CALDWELL, District Judge.

Plaintiff, Peddrick M. Young, Sr., alleges that Defendant, the Republican Caucus of the Pennsylvania House of Representatives, terminated his employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"). Before us is Defendant's motion to dismiss.

### I. *Background*

Plaintiff was employed by Defendant from 1986 until his termination in 1996. At the time of his discharge, Plaintiff was sixty years old. Plaintiff alleges that he was replaced with a younger employee, and that his termination was due to his age. Plaintiff subsequently brought this action, alleging violation of his rights under the ADEA and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §§ 951–63 ("PHRA").[1]

---

**1.** Plaintiff now concedes that his PHRA claim must be dismissed under *Pennhurst State Sch. &* *Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

Defendant is a legislative caucus within the Pennsylvania House of Representatives. The parties agree that Defendant is a governmental entity. (*See* Compl. ¶ 5).

Defendant has moved for dismissal of the complaint, arguing that as an arm of the state, it is immune from suit in federal court under the Eleventh Amendment. Defendant's argument requires us to consider whether Congress' abrogation of the states' Eleventh Amendment immunity in the ADEA is unconstitutional.

## II. *Standard of Review*

When considering a motion to dismiss under Rule 12(b)(6) "all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true." *Malia v. General Elec. Co.*, 23 F.3d 828, 830 (3d Cir.1994). The motion must be denied unless the plaintiff cannot prove any facts in support of the claim which would entitle it to relief. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

## III. *Discussion*

■ Under the Eleventh Amendment, a state may not be sued in federal court absent either a waiver of immunity by the state or an abrogation of immunity by Congress.[2] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 1122–23, 134 L.Ed.2d 252, 265–66 (1996); *Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown)*, 133 F.3d 237, 241 (3d Cir.1998). For Congress to abrogate a state's Eleventh Amendment immunity, it must unequivocally express an intent to do so, and it must act pursuant to a valid exercise of power. *Seminole Tribe*, 116 S.Ct. at 1123, 134 L.Ed.2d at 266; *Sacred Heart*, 133 F.3d at 241.

■ The parties agree that Congress unequivocally acted to abrogate the Eleventh Amendment immunity of the states when it amended the ADEA in 1974. Under the 1974 amendment, the ADEA's definition of "employer" includes "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State...." 29 U.S.C. § 630. Such an unequivocal reference to the states as potential defendants indicates Congressional intent to abrogate the states' Eleventh Amendment immunity. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 695 (3d Cir.1996); *see also EEOC v. Wyoming*, 460 U.S. 226, 243, 103 S.Ct. 1054, 1064, 75 L.Ed.2d 18, 33 (1983); *Gregory v. Ashcroft*, 501 U.S. 452, 467, 111 S.Ct. 2395, 2404, 115 L.Ed.2d 410, 428 (1991); *Seminole Tribe*, 116 S.Ct. at 1124, 134 L.Ed.2d at 267.

■ At issue in this case is whether the 1974 amendment to the ADEA was enacted pursuant to a valid exercise of Congressional power. The Supreme Court ruled in *Seminole Tribe* that the only basis upon which Congress may act to abrogate the states' Eleventh Amendment immunity is Section Five of the Fourteenth Amendment.[3] 116 S.Ct. at 1131–32, 134 L.Ed.2d at 273; *Sacred Heart*, 133 F.3d at 240–42; *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 358 (3d Cir.1997).

■ We must therefore consider whether the 1974 amendment was a valid exercise of Congress' power under Section Five of the Fourteenth Amendment. The Fourteenth Amendment protects individuals from state action which deprives them of due process or denies them equal protection. U.S. Const. amend. XIV § 1. Section Five provides that: "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." *Id.* § 5. Congress' power under Section Five is remedial, extending only to the enforcement of the provisions of the Fourteenth Amendment; Con-

---

**2.** The parties agree that Pennsylvania has not waived its Eleventh Amendment immunity in this case.

**3.** Plaintiff's suggestion that Congress may abrogate Eleventh Amendment immunity when acting under the commerce power was rejected by the Supreme Court in *Seminole Tribe*, 116 S.Ct. at 1128; *see also Sacred Heart*, 133 F.3d at 241 ("since *Seminole Tribe* section five of the Fourteenth Amendment has been the sole basis for Congress to abrogate the states' immunity under the Eleventh Amendment"), *quoting College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 358 (3d Cir.1997).

gress may not use Section Five to define Fourteenth Amendment rights. *City of Boerne v. Flores,* — U.S. ——, ——, 117 S.Ct. 2157, 2164 & 2167–68, 138 L.Ed.2d 624, —— (1997); *Sacred Heart,* 133 F.3d at 241.

The Supreme Court has declined to decide whether Congress acted under Section Five in enacting the 1974 amendment to the ADEA. *EEOC v. Wyoming,* 460 U.S. 226, 243, 103 S.Ct. 1054, 1064, 75 L.Ed.2d 18, 33–34 (1983); *see also Gregory v. Ashcroft,* 501 U.S. 452, 467–70, 111 S.Ct. 2395, 2404–2406, 115 L.Ed.2d 410, 428–30 (1991). The issue has been examined by a number of lower courts, with mixed conclusions. *See Hurd v. Pittsburg State Univ.,* 109 F.3d 1540, 1546 (10th Cir.1997) (Fourteenth Amendment); *Mete v. New York State Office of Mental Retardation & Dev. Disabilities,* 984 F.Supp. 125, 131–134 (N.D.N.Y.1997) (Fourteenth Amendment); *Simpson v. Texas Dep't of Crim. Justice,* 975 F.Supp. 921, 925–27 (W.D.Tex.1997) (Fourteenth Amendment); *Gehrt v. University of Ill.,* 974 F.Supp. 1178, 1182–83 (C.D.Ill.1997) (Fourteenth Amendment); *Humenansky v. Board of Regents,* 958 F.Supp. 439, 443 (D.Minn.1997) (Commerce Clause); *Teichgraeber v. Memorial Union Corp.,* 946 F.Supp. 900, 906–907 (D.Kan.1996) (Fourteenth Amendment); *MacPherson v. University of Montevallo,* 938 F.Supp. 785, 788–89 (N.D.Ala.1996) (Commerce Clause); *see also Hodgson v. University of Texas,* 953 F.Supp. 168

(S.D.Tex.1997) (Fourteenth Amendment); *Pietraszewski v. Buffalo State College,* 1997 WL 436763 (W.D.N.Y. Aug.1, 1997) (Fourteenth Amendment); *Ullman v. University of Virginia,* 1997 WL 134557, at *3–*4 (W.D.Va. March 12, 1997) (Fourteenth Amendment); *Young v. University of Kansas Med. Ctr.,* 1997 WL 150051 (D.Kan. Feb.26, 1997) (Fourteenth Amendment).[4] In light of the Supreme Court's recent refinement of the analysis of Congress' Section Five power in *City of Boerne,* however, we regard the issue as unsettled. *See Goshtasby v. Board of Trustees,* 123 F.3d 427, 428 (7th Cir.1997) (*City of Boerne* gives rise to serious questions concerning the constitutionality of Congress' abrogation of states' Eleventh Amendment immunity in ADEA).[5]

In *City of Boerne,* the Court struck down the Religious Freedom Restoration Act ("RFRA") as unconstitutional, concluding that the Act exceeded Congress' Fourteenth Amendment enforcement powers. The *City of Boerne* Court reached this conclusion after a careful examination of RFRA's purpose and function, in light of both its legislative history, 117 S.Ct. at 2169–70, and its practical effect, *id.* at 2170–71. While the constitutional implications of RFRA are very different from those of the ADEA, *City of Boerne* nonetheless provides significant guidance in our analysis.

---

4. The question was also considered by a number of courts, including the Third Circuit, prior to the Supreme Court's decision in *Seminole Tribe. See Blanciak,* 77 F.3d at 695, and cases cited therein. These cases are of questionable value as precedent, however, as prior to *Seminole Tribe* there was little reason for a court to carefully examine the distinction between a Congressional enactment under the commerce clause and one under Section Five of the Fourteenth Amendment. *See EEOC v. Wyoming,* 460 U.S. at 243, 103 S.Ct. at 1064, 75 L.Ed.2d at 33–34 (declining to consider application of Section Five, in light of finding that ADEA was valid exercise of commerce clause power). Moreover, the Third Circuit's treatment of the question was far from definitive. The *Blanciak* court merely acknowledge that the ADEA's abrogation of Eleventh Amendment immunity had been upheld by other courts under both the commerce power and Section Five. 77 F.3d at 695.

5. *Goshtasby* considers only a request for a stay of proceedings pending the resolution of an inter-

locutory appeal of the district court's refusal to dismiss the ADEA claim on Eleventh Amendment grounds. 123 F.3d at 428. The Seventh Circuit did not reach a conclusion on the merits, but determined that, in light of *City of Boerne,* the appeal was not frivolous, and that a stay of proceedings was therefore appropriate. *Id.* at 428–29.

The *Goshtasby* court's emphasis on the impact of *City of Boerne* is particularly significant given the Seventh Circuit's prior decisions holding that Congress' abrogation of Eleventh Amendment immunity in the ADEA was a valid exercise of Section Five. *See Heiar v. Crawford County,* 746 F.2d 1190, 1194 (7th Cir.1984); *EEOC v. Elrod,* 674 F.2d 601, 609 (7th Cir.1982).

The Seventh Circuit has yet to rule on the merits of the Eleventh Amendment challenge to the ADEA in *Goshtasby.* The case was argued on December 8, 1997, and is presently awaiting disposition.

■ Section Five of the Fourteenth Amendment "is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." *Katzenbach v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 1724, 16 L.Ed.2d 828, 836 (1966). A statute constitutes an appropriate exercise of that power if it:

> may be regarded as an enactment to enforce the Equal Protection Clause, ... is "plainly adapted to that end" and ... is not prohibited by but is consistent with "the letter and spirit of the constitution."

*Id.* (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579, 605 (1819)).

Under *City of Boerne*, we must assess the adoption of the 1974 amendment to the ADEA in light of both Congress' stated intent and the effect and function of the Act. The ADEA was originally enacted in 1967; at that time, the statute prohibited certain age discrimination by private employers. *See EEOC v. Elrod*, 674 F.2d 601, 604 (7th Cir.1982). In 1974, Congress amended the ADEA to expand its reach to public employers as well. Pub.L. No. 93–259, § 28, 88 Stat. 74 (amending 29 U.S.C. § 630(b)(2)). The ADEA amendment was originally proposed by Senator Bentsen in 1972, in conjunction with similar amendments to Title VII; the amendment was not enacted, however, until two years later. *See Elrod*, 674 F.2d at 604–05. The 1974 amendment was enacted as part of a bill which also substantially reformed the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA"). Pub.L. No. 93–259, 88 Stat. 74.

The legislative history of the 1974 law focuses more on the FLSA amendments than on the amendment to the ADEA. While Congress expressly invoked the Commerce Clause in the introductory statement to the House Report, H. Rep. No. 93–913, 1974 WL 11448, at *3, the portion of that report which discusses the ADEA amendment (as opposed to the amendments to the FLSA) focuses on the need to remedy the problem of age discrimination, not on the impact of that discrimination on commerce. *Id.*, 1974 WL

11448, at *84–85; *see also* 120 Cong. Rec. S8768 (1974) (statement of Sen. Bentsen).

This emphasis on the injustice of discrimination based on age has lead a number of courts examining the question to conclude that the 1974 amendment was remedial legislation enacted under Congress' Section Five power to enforce the Fourteenth Amendment's guarantee of equal protection. *See, e.g., Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 699–700 (1st Cir.1983); *Elrod*, 674 F.2d at 605; *Mete*, 984 F.Supp. at 130; *Simpson*, 975 F.Supp. at 925; *Gehrt*, 974 F.Supp. at 1183. *But see Humenansky*, 958 F.Supp. at 443; *MacPherson*, 938 F.Supp. at 789 n. 6.

*City of Boerne* teaches, however, that we must look beyond legislative history in determining whether Congress is properly acting under its Section Five power. 117 S.Ct. at 2170. The *City of Boerne* Court found that RFRA was not a valid exercise of Congress' Section Five power despite its avowedly remedial purpose because it was an attempt to redefine the parameters of the underlying right, rather than an attempt to enforce that right as defined by the courts. *Id.*

We must therefore consider whether the ADEA is in fact designed to enforce some Fourteenth Amendment right. A number of courts have found that the Act protects the equal protection rights of older workers. *See, e.g., Hurd*, 109 F.3d at 1546; *Simpson*, 975 F.Supp. at 925–27; *Teichgraeber*, 946 F.Supp. at 906–907

Defendant argues that older workers are not entitled to equal protection under the Fourteenth Amendment. The Supreme Court has found that the aged are not a suspect class for equal protection purposes. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 524–25 (1976); *Gregory v. Ashcroft*, 501 U.S. 452, 470–71, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410, 430 (1991); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Defendant suggests that the 1974 amendment to the ADEA would constitute an attempt by Congress to expand the rights protected by Section One of the Fourteenth Amendment, and therefore

is not a valid exercise of congressional power under *City of Boerne.*

We disagree. The fact that a particular group is not a suspect class which is entitled to the protection of strict scrutiny analysis under the Equal Protection Clause does not mean that it is not entitled to any Fourteenth Amendment protection at all. The *Murgia* Court did *not* find that the aged are precluded from seeking any relief from discrimination under the Equal Protection Clause; instead, the Court found that such discrimination must be analyzed under the relatively relaxed rational basis standard. 427 U.S. at 314, 96 S.Ct. at 2567, 49 L.Ed.2d at 525. While age discrimination is not subject to review under the strictest of constitutional standards, it *is* subject to Fourteenth Amendment review. The particular standard applied by a court does not define the presence or absence of Fourteenth Amendment protection. *See Clark v. California,* 123 F.3d 1267, 1270–71 (9th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3308 (U.S. Oct. 20, 1997) (No. 97–686) (discussing Americans With Disabilities Act); *Martin v. Kansas,* 978 F.Supp. 992, 995 (D.Kan.1997) (same); *Gehrt,* 974 F.Supp. at 1183 (ADEA); *Autio v. Minnesota,* 968 F.Supp. 1366, 1371 (D.Minn.1997); *see also City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313, 324 (1985) ("Our refusal to recognize the retarded as a quasi-suspect class does not leave them entirely unprotected from invidious discrimination").

Likewise, the fact that the ADEA subjects state action to a degree of scrutiny which is different than that which would apply in an equal protection challenge will not take the statute beyond the sphere of appropriate Section Five legislation:

> Legislation which deters or remedies constitutional violations can fall within the sweep of Congress' [Section Five] enforcement power even if in the process it prohibits conduct which is not unconstitutional and intrudes into legislative spheres of autonomy previously reserved to the States.

*City of Boerne,* 117 S.Ct. at 2163 (internal quotation marks omitted). In enforcing the right of the aged to be free from discrimination in employment through the ADEA, Congress has acted to remedy violations of the Fourteenth Amendment's guarantee of equal protection, not to redefine that guarantee.

The Supreme Court in *City of Boerne* explained that:

> While the line between measures that remedy or prevent unconstitutional action and measures that make a substantive change in the governing law is not easy to discern, and Congress must have wide latitude in determining where it lies, the distinction exists and must be observed. There must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. Lacking such a connection, legislation may become substantive in operation and effect.

*Id.* at 2164. There is a clear congruence and proportionality between the injury addressed by the ADEA—unfair discrimination in employment, based solely on an employee's age—and the means adopted by the statute to remedy that injury. The Equal Protection Clause guarantees to all citizens that the government will deal with them as individuals, not discriminate against them based on membership or classification. *See City of Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3254 ("all persons similarly situated should be treated alike"). The ADEA seeks to enforce this guarantee by preventing the states from substituting age as a proxy for bona fide occupational qualifications.

This conclusion is consistent with the majority of cases considering the ADEA's abrogation of Eleventh Amendment immunity, including those cases decided since *City of Boerne. See, e.g., Mete,* 984 F.Supp. at 131–34; *Simpson,* 975 F.Supp. at 926–27; *Gehrt,* 974 F.Supp. at 1182–83; *Hurd,* 109 F.3d at 1546; *Teichgraeber,* 946 F.Supp. at 906–907; *see also Hodgson,* 953 F.Supp. at 169; *Pietraszewski,* 1997 WL 436763; *Ullman,* 1997 WL 134557, at *3–*4; *Young,* 1997 WL 150051. *But see Humenansky,* 958 F.Supp. at 443; *MacPherson,* 938 F.Supp. at 788–89. It is also supported by the conclusions of those courts to have considered the closely analogous question of the abrogation of Elev-

enth Amendment immunity in the Americans With Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"), since the Supreme Court decided *Seminole Tribe* and *City of Boerne. See Clark,* 123 F.3d at 1270–71; *Martin,* 978 F.Supp. at 995–98; *Autio,* 968 F.Supp. at 1369–71; *cf. Nihiser v. Ohio Envtl. Protection Agency,* 979 F.Supp. 1168 (S.D.Ohio 1997) (ADA's prohibition of discrimination in employment a valid exercise of Section Five power; accommodation requirement is not); *Brown v. North Carolina Div. of Motor Vehicles,* 987 F.Supp. 451, 457–58 (E.D.N.C. 1997) (ADA's provisions requiring special parking privileges for disabled not a valid exercise of Section Five power).

We therefore conclude that the abrogation of the states' Eleventh Amendment immunity in the 1974 amendment to the ADEA was a valid exercise of Congress' enforcement power under Section Five of the Fourteenth Amendment. As applied to the states, the Act may be regarded as an enactment to enforce the Equal Protection Clause, which is plainly adapted to that end, and is consistent with the letter and spirit of the Constitution. *See Katzenbach,* 384 U.S. at 651, 86 S.Ct. at 1724, 16 L.Ed.2d at 836. Plaintiff's claims are not barred by the Eleventh Amendment; Defendant's motion to dismiss must be denied.